The next day, the opinion of the Court was delivered by
Parsons, C. J.
The objection to the indictment is, that the facts therein found do not amount to felony. The breaking and entering of a dwelling-house in the night is not burglary, unless it be done with an intent to commit a felony. This position the attorney-general has not contested. The question for our decision then is, whether the cutting off the ear of Dixon, of set purpose and of malice aforethought, with the intention to maim and disfigure him, is by our laws a felony; for if it be not a felony, an intention to do it cannot be an intention to commit felony.
That the cutting off an ear, maliciously and of set purpose, with the intention to maim and disfigure is not a mayhem by the common law, is not denied; but the attorney-general has insisted that the statute of 1804, c. 123, has made the cutting off the ear, with the disposition and intention aforesaid, a mayhem; that mayhem at common law is felony; and that, as a necessary conclusion, the cutting off the ear, maliciously and with the intention to maim and disfigure, is, by force of the statute, a felony.
By the ancient common law, mayhem was an injury of a particular nature, constituting a specific offence, the commission of which could be regularly averred by no circumlocution, without the aid of the barbarous verb mahemiare. It consisted in violently and unlawfully depriving another of the use of a member proper [ * 248 ] for his defence in fighting; *and was punished by a forfeiture of member for member, in consequence of which forfeiture it was deemed a felony. If the sufferer sought this satisfaction, or rather revenge, his remedy was by an appeal of mayhem ; and the sovereign punished this injury done to his subject, by an indictment for a mayhem; and in both the appeal and indictment the offence must be alleged to have been committed feloniously.
A punishment of this description could have existed only in a rude state of civil society; and as civilization advanced, the punishment was disused, and the offender made satisfaction by paying pecuniary damages, and was punished by his sovereign by fine and imprisonment, in the same manner as in cases of trespass. So long *209 ago was this punishment disused, that Staundford, remarking on the statute of 5 H. 4, c. 5, which made the putting out of an eye felony, observes that before that statute it was not felony. He, however, subjoins a quœre, and refers to Bracton.
This was the state of the common law, long before and at the time when our ancestors emigrated to this country, bringing with them but a very small part of the common law, defining crimes and their punishment. Mayhem was therefore never deemed by them a felony, but only an aggravated trespass at common law; and as such, the offender was answerable to the party injured in a civil action of trespass, and to the government upon an indictment for a misdemeanor: and no statute provision, during the existence of the colonial and provisional charters, recognizes mayhem as a distinct offence from trespass, or as constituting a specific felony. We are, therefore, obliged to consider mayhem as no felony by the common law adopted in this state.
Since the revolution, the only legislative provisions, relating to this offence, consider and punish it as a misdemeanor. If, therefore, the statute of 1804, c. 123, has declared the maliciously cutting off an ear, with intent to maim and disfigure, a mayhem, we cannot thence infer that it is * felony. [*249] The statute, however, has not made that declaration. It only enacts that if any person, with set purpose and aforethought malice, and with an intention to maim and disfigure, shall unlawfully cut off an ear of another, he, and every person privy, being present and aiding, or absent, having counselled or procured the commission, shall be punished by solitary imprisonment, and by confinement to hard labor. Here the word maim is used in the popular sense of mutilating, and not as synonymous with the technical word mayhem. The cutting off the ear is not called a maim, but is created an offence, when done with an intention to maim and disfigure, and punished as a misdemeanor; for a trespass may be committed with set purpose, and with malice aforethought.
The fifth section of the statute has been adduced, to support the attorney-general’s argument; because it provides, that every man, who shall assault another, with intent to maim and disfigure him, shall be punished as a felonious assaulter. But this expression is descriptive of the temper, disposition, and character of the offender, and not of the legal nature of the offence. By tfie same statute, any person sending a challenge to fight a duel shall also be punished as a felonious assaulter; and very clearly the mere sending of the challenge is not even an assault. We are therefore satisfied, that the offence described in the indictment is not a felony, either by our common law or by any statute.
*210 The attorney-general has argued, that if the indictment is not a sufficient description of a felony, yet it may be supported as an -indictment for a misdemeanor.ϯ
There are one or two ancient cases in favor of this position, as Holmes’s case, (5) and Martin Lesser’s case, in the time [ * 250 ] of Henry 4, which is reported in Cro. Jac. 497. *But in a later case of Rex vs. Westbeer, (6) the old cases were considered and overruled. The Court, when the prisoner was discharged, observed that in the cases cited for the king, the judges appeared to be transported with zeal too far.
Thus stands this question at common law. But our statute cf 1805, c. 88, in authorizing a conviction of part of an indictment for felony, restrains the conviction to cases, where the part, of which the prisoner is found guilty, constitutes of itself a felony. This provision seems to be a statute construction of the point, which leaves no doubt remaining.

Per Curiam.

Let judgment be entered that the indictment is bad, and let the prisoners be discharged, (a)
Note. After this judgment was rendered, the prisoners were ordered, upon the motion of the attorney-general, to recognize for their appearance de die in diem, to answer for the misdemeanor; of which they were afterwards indicted, and during this term were tried and acquitted.

 This suggestion fell from the attorney-general, after the prisoners had pleaded not guilty, and before the demurrer was put in, and the plea of not guilty retracted.

 Cro. Car. 376.

 2 Str. 1133.

 [In order to conviction, it is not commonly essential to prove the charge, to the whole extent, as laid in the indictment; it is in general sufficient if so much of the charge there specified, is proved, as constitutes an offence punishable by law. — (Rex vs. Holingsberry, 4 B. & Cr. 330. —Rex vs. Hunt, 2 Camp. 585. — 2 Russ. on Cr. 708, 2d English edition. — 2 Deac. 458, and the cases there cited.) — But where the indictment charges an offence in proper terms, and part of this charge constitutes a distinct offence, and in the trial for the whole charge as laid, the prisoner cannot have the same advantages in his defence as he might have in a trial upon a charge only for that part constituting such distinct offence ; if the prisoner be not found guilty of the whole offence charged, but of that part only constituting such distinct offence, he cannot be convicted upon such indictment for such distinct offence Thus, in England, where, in cases of felony, the prisoner cannot have a copy of the indictment, a special jury, or counsel to address the jury, but may have such copy, jury, and counsel, in cases of misdemeanor, it has been held that if a prisoner be indicted for felony, he cannot, upon that indictment, be convicted of a misdemeanor, embraced in the charge. But these decisions are not applicable in this country, where no such distinctions are made, in regard to the mode of trial for these different offences. Besides, in the case reported in the text, and in Holmes's case, where the charge did not amount to felony, the prisoner, being found guilty of a part of the charge, amounting to a misdemeanor at common law, might lawfully have been convicted of a misdemeanor. — (2 Russell on Crimes, 2d London edition, p. 489, note (a). —Kelyng, 29. — 2 East. P. C. 1023, c. 21, § 5. — Rex vs. Scofield, Caldecot, 397.)—The decision in the text, therefore, is clearly erroneous. — Ed.]