NEW-YORK,
May, 1823.

The People
*vs.*
B. Edwards
and
Sam'l Brown.
</div>

---

The People *vs.* Benjamin Edwards and Samuel Brown.
*Burglary.*

The defendants were charged with committing a burglary on the night of
the 26th of April, 1823, by breaking into the house of Thomas W. Pear-
soll, and feloniously taking and carrying away a large amount of prop-
erty.

THE facts of the case were as follows ; Mr. Pearsoll re-
sided at No. 25 Elizabeth-street. On the 26th of April
retired with his family about 11 o'clock at night, securing
the house in the usual manner. In the morning when
the family arose, it was found the house was broken open,
and property carried away. It was discovered the win-
dow shutter had been pryed open, and the window raised
and the entry had been make through it.

<div style="text-align:right">

What is a
sufficient
breaking and
entry in the
night time to
constitute a
burglary.
May be by
raising the
window-sash
*Entry* in the
*night time* pro
ved by circum
stantial evi-
dence.
</div>

NEW-YORK,
May ,1823.

The People
vs.
B. Edwards.
and
Sam'l Brown.

The prisoners were arrested in Torbet-street, about day-light the same morning. In their possession were found a considerable quantity of the property stolen, and also a marling-spike, with which it appeared they had forced their way into the house. The marks upon the window were such as indicated the use of the instrument. In their examination, Brown confessed the breaking and entry into the house, and the asportation of the goods. The only doubt, therefore, was, whether it was done before day-light, and whether the window sash was up, or whether the family, before they had retired, had closed it down.

*Clark* and *M'Ewen*, counsel for the prisoners, contended that in order to make out the charge of a burglarious entry, it must be proved that they *broke* and entered. Merely prying open the window shutters, which were not fastened, was not such a breaking as the law required. The sash of the window might not have been shut down the night before. It was the owner's fault to leave his house in such an exposed situation ; that it would amount to grand larceny, and no more.

In the second place, it was uncertain what time the act was committed. It might have been done after day-light. The family retired to bed at the usual hour, and arose in the morning between seven and eight o'clock. They cannot, therefore, speak as to the time the felony took place. The prisoners were arrested *after* day-light, in Torbet-street, some distance from the house. They contended that in crimes where the punishment was so penal, presumptive evidence should be received with the greatest caution.

*Maxwell District Attorney*, observed that he took the

evidence against these men to be full and satisfactory.—
It was true it came within that kind of evidence denomi-
nated in law circumstantial or presumptive. But this
kind of evidence was often of such a nature as to amount
to full and conclusive proof of a fact ; and that he took
the proof now before the Court to be of that species.—
Here it was not denied that the prisoners entered the
house and carried away the goods. That fact is proved
beyond a question of doubt; but it is said the proof of
their breaking and entering in the night time is insufficient.
How does this fact stand ? The evidence was that the
prisoners were arrested in Torbet street, about a quarter
of a mile from the house where the felony was committed,
about day-light the same morning, in possession of the
goods. It must, therefore, approach a certainty that the
felony was committed in the night. With regard to the
breaking and entering, it was apparent, from the testimo-
ny, there were both. When the family retired, they took
the usual precaution to close and secure the house, that it
appeared the prisoners forced open the window shutter
with an iron instrument, and entered the house, that it was
straining the presumption of law too far in favor of the
prisoners, to presume the window sash had not been put
down when the family retired to bed ; and that if the jury
believed the prisoners raised the window sash, the break-
ing would be complete, &c.

NEW-YORK,
May, 1823.

The People
vs.
B. Edwards
and
Sam'l Brown.

The Court charged the jury that a burglary was defined
to be a breaking and entering the mansion house of an-
other, in the night, with intent to commit a felony, whether
such intent be executed or not. That this case depended
principally whether there was a breaking and entry in the
night time. The evidence was, that the prisoners were

NEW-YORK,
May, 1823.

The People
*vs.*
B. Edwards
and
Sam'l Brown.

found in possession of goods taken from the house of Mr. Pearsoll on the night of the 26th of April ; and that it was in proof before the Court and jury the entry was made into the house by forcing open the window shutter, which was thrown to, and left *without being fastened ; that it was* uncertain whether the window sash was raised or not; that if the jury were of opinion it was not raised when the family retired to bed, the raising it for the purpose of entering into the house, would be a breaking.

And that the other question, whether the act was committed in the night time, was a proper one for the jury to decide. The prisoners were found in possession of the property taken from the house, the same morning, about day-light, near one quarter of a mile from the house.— They were found in possession of an instrument well adapted, and which was probably used to open the window ; that it would seem, from the evidence, that the act must have been committed in the night time,.as they were arrested about day-light, in Torbet street, a considerable distance from the place where the felony was committed, and left it to the jury, under all the circumstances of the case, whether the prisoners were guilty of breaking and entering the house of Mr. Pearsoll in the night time, with intent to commit a felony.

The jury found Brown guilty of burglary, and Edwards guilty of grand larceny.

NOTE.—The above definition of burglary agrees with the books. See 3 Inst. 63. 1 Hawk. 101. Wils. Lec. vol. 3, p. 63.

It is laid down that there must be:

1. A breaking and entering.
2. *Must be in the mansion or dwelling house of another.*

3. It must be in the night time, with intention to commit a felony.

NEW-YORK,
May, 1823.

The People
vs.
B. Edwards
and
Sam'l Brown.

1. There must be a breaking and entering. The breaking and entry, however, need not be by force, it need not be actual, but may be implied in law, as where a man comes down a chimney, or unlocks a door; lifts the latch, or obtains an entry in by fraud, or by colour of law, &c. In each of these cases, the breaking is implied. Hawk. P. C. 102. Kelynge, 42, 63. Bac. abr. vol. 1. p. 333, tit. burglary, letter A. So entering the house either in the day or night, with intent to commit a felony, and breaking out in the night, is burglary. 12 Ann Stat. 1 cap. 7. 2 Stra. 881.

Where a servant opened his lady's chamber, which was fastened with a spring lock, with a design to lavish her, it was held to be burglary. 1 Stra. 481.

If a servant in the house in the night time, open the street door, and let in another person who robs the house, and afterwards the servant opens the door and lets out the other person, it is burglary in both, although the servant did not go out of the house. 2 Stra. 880. Removing a stick of wood from an inner cellar door, and turning a button, by which the door was fastened, in the night, with a felonious intent, is a sufficient breaking of a house to constitute burglary, though the outer cellar door may not have been fastened. City Hall Rec. vol. 4, p. 62; but see Coxe's Rep. 439. Fost. 108. East. P. C. 489.

It is burglary to break out of a house, into which the thief entered in the night with an intent to steal, though he did not break in entering.

To cut a hole in the night time in the window shutters of a shop, part of a dwelling house, and by putting the hand through the hole, to take out goods, is a sufficient entry to constitute burglary. Fost. 107.— East. P. C. 490.

Entry.

Shooting a ball through the window, or boring a hole through the door, are not burglaries. Leach, 452. East. P. C. 490.

The least entry, however, is sufficient, it may be made either with the

NEW-YORK,
May, 1823.

The People
*vs.*
B. Edwards
and
Sam'l Brown.

Must be the mansion or d w e l l i n g house of another.

whole or any part of the body; by stepping the threshold of the door, or inserting the hand or a hook through a window, &c. Fost. 107. Hawk. P. C. 103. Bac. abr. vol. 1, p. 334, title burglary, letter B. Coxe's Rep. p. 439.

It is said by Hawk. b. 9, c. 38, § 11, that it may be a house wherever a man dwells but for a part of the year, or a house which one has hired to live in, and brought part of the goods into, but has not yet lodged in, or a chamber in one of the inns of Court wherein a person usually lodges, or a house which a man's wife hires without his privity, and lives in by herself without him, may be called his dwelling house, and will sufficiently satisfy the words *domus mansionalis* in the indictment, whether any person were actually therein or not at the time of the offence. 1 Hale, 556. 4 Coke, 40. Kely. 43. 46. Bac. abr. vol. 1, p. 335, tit. burglary, letter E. Blac. Com. vol. 4, p. 225. Wils. Lectures, vol. 3, p. 63.

Also, all out buildings, as barns, stables, dairy houses, &c. adjoining to a house, are looked upon as part thereof, and consequently burglary may be committed in them; but if they are removed at any distance from the house, it seems that it has not been usual of late to proceed against offences therein as burglaries. Hawk. P. C. vol. 1, p. 163.

It was held the breaking and entering in the night time a bake house, eight or nine yards distant from the dwelling house, and only a pale reaching between them, was burglary. 1 Hale, 558; but see Leach, 171, 2 n.

It is not burglary to break in the night an out house occupied with a dwelling house, but separated therefrom by an open passage eight feet wide, and not connected with the dwelling house by any fence inclosing both the out house and dwelling house. Leach, 171.

A shop adjoining, built close to a house, and under the same roof, (there being a court yard before the house, and shop enclosed by a brick wall, three feet high, which included both the house and shop, and in which wall was a gate fastened by a latch, which served as a communication to both house and shop,) is part of the dwelling house, although there be no internal communication between the shop and

the house, and although no person sleep in the shop. Leach, 396. <span>NEW-YORK,</span>
East. P. C. 491. 508. See also Leach, 221, 222, note (A) 893. East. <span>May, 1823.</span>
P. C. 498. Fost. 76. 2 Bos. and Pul. 503.

<span>The People</span>
<span>vs.</span>

The prosecutor left his house in London and went to Cornwall, with in- <span>B. Edwards</span>
tent to return, and sent his wife and family out of town, and left the <span>and</span>
<span>Sam'l Brown,</span>
key with a friend to look after the house; after he had been gone a
month, no person being in the house, it was broken open in the night
and robbed of divers goods; he returned a month after, with his fam-
ily, and inhabited there; adjudged burglary. East. P. C. 496.

Breaking open, in the night time, a store, at the distance of twenty feet
from a dwelling house, but not connected with it by fence or inclos-
ure, is not burglary. 4 Johns. Rep. 424.

A store, in which no person slept, and from which there was no commu-
nication into other rooms in the house occupied by a family, is not
such a dwelling house as that burglary can be committed therein.
City Hall Rec. vol 3, p. 192.

Burglary may be committed in a house standing near enough to be used
with the dwelling house, or enclosed in the same fence with it. 1
Hayw. 102, 242.

To enter in the night feloniously, through a chimney into a store, from
which chimney there is no entrance into the dwelling part of the
house except through the store, is a burglary. City Hall Rec. vol.
4, p. 63.

To break into a store, from which there is a communication into a room
occupied for sleeping, by a clerk belonging to the family of the owner
of the store, whose family resides at a separate place, is a burglary.
Ibid. vol. 5, p. 10.

It is laid down in all the books, the breaking and entering must be in the <span>It must be</span>
night, when the day-light has so far disappeared that the countenance <span>in the night</span>
of a man cannot be discerned. As to what shall be accounted night <span>time with in-</span>
<span>tenion to com-</span>
for this purpose. Anciently the day was accounted to begin only <span>mit a felony.</span>
from sun rising, and to end immediately upon sunset; but it is now

NEW-YORK,
May, 1823.

generally agreed, that if there be day-light enough begun or left, ei-
ther by the light of the sun or twilight, whereby the countenance of
a person may be reasonably discerned, it is no burglary, but that
this does not extend to moonlight, for then many midnight burglaries
would go unpunished. East. C. L. p. 509. 4 Blac. Com. 224. 1 Hale,
550. 1 Hawk. ch. 38. 1 Bac. Ab. 541.

The indictment for burglary should lay a *noctanter*, as the omission of
that was held fatal. Chip. Rep. 32.

The breaking and entry must be with an intent to commit a felony; but
it seems unnecessary that the intent should be executed. 1 Hale·
559, 561. East. C. L. p. 509. Kel. 30. Hawk. P. C. 105. Bac. Abr,
vol. 1, p. 336. tit. Burglary, letter (F.)

The breaking and entering a dwelling house, in the night time, with in-
tent to cut off the ear of an inhabitant, is not a burglary. 7 Mass.
Rep. 245; but see Van Riper's case, City Hall Rec. vol. 2, p. 45. It
seems the breaking and entering a house in the night, feloniously,
is the gist of the offence, rather than the consumation of the intent.