Shaw C. J.
delivered the opinion of the Court. Upon the defendant’s plea in bar to the indictment pending against him, for the alleged murder of Maria Leonard, several questions of law have been presented for the consideration and decision of the Court. The principal question is, whether the proceedings in the Municipal Court, set forth in the defend *507 ant’s plea in bar, and appearing upon oyer of the record, are sufficient in law to bar the present indictment.
This plea of a former conviction, like that of a former acquittal, is founded upon that great principle and fundamental maxim of criminal jurisprudence, that no man shall be twice put in jeopardy for the same offence. This is one of the ancient and well established principles of the common law, sanctioned and enforced, in different forms of words, in most of the constitutions of the several States, and in that of the United States. In the latter it is thus expressed ; — “ Nor shall any person be subject, for the same offence, to be twice put in jeopardy of life or limb.” This is an ancient phrase, known in the law; and without endeavouring to seek for the history of its origin, in times when dismemberment was actually inflicted as a punishment for offences, it may now be taken to be an expression descriptive of the class of punishments denounced by law against those offences coming under the denomination of felony. The People v. Goodwin, 18 Johns. R. 201. This clause in the constitution, then, may be considered equivalent to a declaration of the common law principle, that no person shall be twice tried for the same offence.
But the application of the maxim in each particular case in which it is relied on as a bar to further proceedings in a prosecution, requires the consideration, whether in fact the party pleading has before been put in jeopardy, and if so, whether it can be said to be for the same offence. If these circumstances do not concur, the maxim does not apply to the case.
Thus, where the court before which the former trial took place had no jurisdiction of the offence, the party cannot be deemed in law to have been put in jeopardy, because no valid and binding judgment could have been rendered by such court.
So, where the indictment was insufficient, in form or substance, and no judgment could be rendered upon it; because it is to be deemed as a nullity, wholly inoperative and void, and upon which no punishment can be awarded.[1]
*508 So, after the' jury is empanelled and charged with the prisoner, and progress made in the trial, if through the death or sudden sickness of a juror, the illness of the prisoner, or other case of urgent necessity, the progress of the trial is interrupted, another jury may be empanelled, and the prisoner again put upon his trial.
So it has been held in modern times, though it was long doubted, and these doubts were countenanced by some respectable authorities, that where the jury, after being long kept together, cannot agree, where it is manifest that they have no reasonable prospect of agreeing, and no means remain, but famine or exhaustion, to compel them to agree, or where the powers of the court are near terminating by the legal termination of their session, the court, as a power necessarily incident to the due and regular administration of justice, may discharge the jury, -without the consent of the prisoner, and again empanel a jury and put him upon his trial. Commonwealth v, Bowden, 9 Mass. R. 494 ; The People v. Goodwin, 18 Johns. R. 187 ; United States v. Perez, 9 Wheat. 579.
These decisions cannot be regarded as a violation of the maxim under consideration, because, although in a certain sense it may be said that the prisoner was put in jeopardy by the first trial, yet the event has shown that there was no legal trial, and therefore that he was in no such jeopardy or danger of conviction as the maxim regards.
But a more important and often a more difficult question arises, in the application of the principle in question to particular cases, from the consideration whether the offence for which the party stands charged, is the same offence of which he has before been acquitted or convicted ; and this is the main inquiry in the present case. This must be determined by well established authorities.
Mr. Justice Blackstone states it thus ; — that the pleas of a former acquittal and former conviction, must be upon a prosecution for the same identical act and crime. 4 Bl. Comm. 336. It must therefore appear to depend upon facts so combined and charged as to constitute the same legal offence or crime. It is obvious therefore, that there may be great similarity in the facts, where there is a substantial legal *509 difference in the nature of the crimes ; and on the contrary, there may be considerable diversity of circumstances, where the legal character of the offence is the same. As where most of the facts are identical, but by adding, withdrawing or changing some one fact the nature of the crime is changed ; as where one burglary is charged as a burglarious breaking and stealing certain goods, and another as a burglarious breaking with an intent to steal. These are distinct offences. Rex v. Vandercomb, 2 Leach, 816. So on the other hand, where there is a diversity of circumstances, such as time and place, where time and place are not necessary ingredients in the crime, still the offences are to be regarded as the same.
In considering the identity of the offence, it must appear by the plea, that the offence charged in both cases was the same in law and in fact. The plea will be vicious, if the offences charged in the two indictments be perfectly djsnnct in point of law, however nearly they may be connected in fact. As if one is charged as accessory before the fact and acquitted, this is no bar to an indictment against him as principal. But it is not necessary that the charges in the two indictments should be precisely the same ; it is sufficient if an acquittal from the offence charged in the first indictment virtually includes an acquittal from that set forth in the second, however they may differ •in degree. Thus an acquittal on an indictment for murder will be a good bar to an indictment for manslaughter, and é converso, an acquittal on an indictment for manslaughter will be a bar to a prosecution for murder ; for in the first instance, had the defendant been guilty, not of murder but of manslaughter, he would have been found guilty of the latter offence upon that indictment ; and in the second instance, since the defendant is not guilty of manslaughter, he cannot be guilty of manslaughter under circumstances of aggravation which enlarge it into murder. 1 Stark. Cr. PI. (2d edit.) 322.
From these considerations it appears to us that the true test, to determine whether a conviction or acquittal upon one indictment is a good bar to another, is well expressed in East’s Crown Law, as drawn from the case of Rex v. Vandercomb and Abbott, 2 Leach, 816. u These cases establish the principle, that unless the first indictment were such as the prisoner *510 might have been convicted upon by proof of the facts contained in the second indictment, an acquittal on the first indictment can be no bar to the second.” 2 East’s P. C. 522.[1]
So in a recent case the doctrine was recognised, that such plea is no bar, unless the facts charged in the second indictment would have warranted a conviction on the first. Rex v. Taylor, 3 Barn. & Cressw. 502.
So Chitty, speaking of the identity of the offence requisite to support such a plea, states it thus ; — “As to the identity of the offence, if the crimes charged in the former and present prosecution are so distinct, that evidence of the one will not support the other, it is inconsistent with reason, as it is repugnant to the rules of law to say, that the offences are so far the same, that an acquittal of the one will be a bar to the prosecution for the other.” 1 Chit. Cr. Law, 453.
This rule seems perfectly reasonable and just, and is well calculated to give effect to the principle, that no one shall be twice tried for the same offence. For otherwise, if the facts charged in the indictment now pending, could have been given in evidence, and would have supported the former indictment, then, though formerly convicted in the Municipal Court, the prisoner might be here again convicted of precisely the same offence, and so be twice punished for the same crime. Or, should he have been acquitted on the former indictment upon a full trial upon the merits, still he might upon a trial here be convicted, contrary to the plainest principles of justice and ol criminal jurisprudence.
In applying this rule to the present case, we are all of opinion, that the facts constituting the felony and murder charged in the indictment now pending would not have been competent evidence to warrant a conviction of the offence charged in the indictment in the Municipal Court. That offence was a misdemeanor, to wit, an assault, charged to have been committed with a felonious intent to murder. The offences are distinct in their nature, of a distinct legal character, and in no case could a party on' trial for the one be convicted of the other.
The indictment for murder necessarily charges the fact of *511 killing, as the essential and most material fact, which gives its legal character to the offence. If the party assaulted, after a felonious assault, dies within the year and day, the same act, which till the death was an assault and misdemeanor only, though aggravated, is by that event shown to have been a mortal wound. The event, strictly speaking, does not change the character of the act, but it relates back to the time of the assault, and the same act, which might be a felonious assault only had the party not died, is in truth shown by that event to have been a mortal wound; and the crime, which would other wise have been an aggravated misdemeanor, is thus shown to be a capital felony. The facts are essentially different, and the legal character of the crime essentially different.
This point seems to be well established by authorities.
“ So the rule fails,” says Starkie, (that is, that the facts charged in the latter indictment would have supported the former,) “ if the lesser offence be but a trespass, and the greater offence a felony, for upon an indictment for felony the defendant could not have been found guilty of the trespass.” 1 Stark. Cr. PI. (2d edit.) 324.
We think this does not result, as stated in the argument, from considerations peculiar to the administration of justice in England, to wit, that a prisoner has privileges upon a trial for felony, not allowed in cases of misdemeanor, but from the broader consideration, that the offences are, in legal contemplation, essentially distinct in their nature and character ; and that this is manifest from an examination of the authorities. Westbeer’s case, 1 Leach, 18.
This was distinctly decided in this Court, in the case of Commonwealth v. Newell, 7 Mass. R. 249. Several persons were indicted for a burglary in breaking and entering a dwellinghouse in the night time with intent to maim and disfigure the owner, by cutting off one of his ears, which was charged as a burglarious breaking and entering with a felonious intent. The Court, on demurrer, being of opinion that the offence charged did not amount to a felony, a question was made whether it would not warrant a judgment for the misdemeanor as for an aggravated assault; but. it was decided, that at common law this could not be done, and the statute formerly au *512 thorizing it was not now in force. The prisoners therefore were bound over to answer for the misdemeanor, upon another indictment.
We are aware that, in determining that upon an indictment for felony the party cannot be convicted of a misdemeanor, our decision is in conflict with a former decision of this Court. Commonwealth v. Cooper, 15 Mass. R. 187. In that case it was held, that where one is indicted for a rape, and the jury cannot agree to convict him, they may find him guilty of an assault with intent to commit a rape. This decision was obviously made without much time for consideration, without any examination of authorities, after the jury had oern long kept together without being able to agree upon a verdict. The same rule has been adopted once or twice since upon the authority of this case only, and without any further argument or consideration ; but we are satisfied, upon some deliberation, that it cannot be supported.
This opinion results as well from a consideration of the ^common law authorities, as from an examination of the statutes of the Commonwealth.
The statute referred to by Parsons C. J. in Commonwealth v. Netcell, was St. 1805, c. 88. This statute, in terms, repealed many old statutes, and then enacted, “ that when any person indicted of any felony shall be., by the verdict of the jury of trials upon such indictment, acquitted from part of such indictment and convicted of the residue thereof, any such verdict may be accepted and recorded in the court where such trial shall be, and thereupon such person may be adjudged to be guilty of the ofience, if any, which shall appear to such court to be substantially alleged in and by the residue of such indictment, if the same shall amount to a felony, and shall be sentenced and punished accordingly.
This statute repeals, among others, the St. 1784, c. 66. This statute of 1784 provided, in § 11, that when any person should be indicted for an aggravated crime or misdemeanor, and on trial found guilty of a part of such crime which shall substantially amount to a crime of a lower nature, the court should proceed'to sentence such convict accordingly. Taking these two statutes together, we think the construction is most *513 manifest. The earlier statute, upon the charge of any crime, authorized the jury to find the prisoner guilty of a part, whether such part amounted to a felony or not. This statute is in terms repealed, and another similar one enacted, with this limitation, that when the crime charged is a felony, the jury may convict and the court sentence for a part, provided such part amounts to a felony. By force of this obvious and studious altsration of the law in this respect, the powrer of convicting of a misdemeanor, on an indictment for a felony, seems to be effectually taken away. The construction seems to be as conclusive as negative words could make it, viz. that such verdict shall not be received, unless the part of the offence found shall amount to a felony. This view of the statute provisions, as well that repealed as that enacted, well warrants the remark of Parsons C. J., in Commonwealth v. Newell, that this provision constitutes a statute construction of the point, which leaves no doubt remaining. If on an indictment for a felony there cannot be a conviction for a misdemeanor, it seems to be a necessary inference, that on an indictment for a misdemeanor, if the evidence be such as to prove a felony actually committed, the prisoner must be acquitted of the misdemeanor, in order to being indicted for the felony.
This construction is strongly corroborated by considering the effect of a pardon.
It was stated at the bar, in the course of the argument, that inasmuch as an assault is a necessary ingredient in the crime of murder, a pardon of an assault would by necessary consequence operate as a pardon of the murder. The argument is certainly countenanced by a passage in Lord Hale. “ If a man give another a mortal stroke, and he dies thereof within a year and a day, but mesne between the stroke and the death there comes a general pardon, whereby all misdemeanors are pardoned, this doth pardon the felony consequentially, because the act, that is the offence, is pardoned, though it be not a felony till the party die; ” 1 Hale’s P. C. 425; for which Cole's case is cited from Plowden. If such would be the effect of a pardon, it would go far to support the argument in favor of the plea in bar; for it is difficult to perceive any substantial distinction between a former acquittal or former con *514 viction and a pardon. Each effectually secures the party charged from further prosecution. But we are satisfied, from the most careful examination of the question, that such would not be the effect of a pardon. This subject is fully considered in Foster’s Crown Law, an authority of the highest character in questions of this nature.
Case of Nicholas, Foster’s Cr. L. 64. The prisoner was indicted for petty treason. It was argued in his behalf, that he was entitled to the benefit of the act of general pardon passed at the last session, which took effect after the poison was administered, but before death ensued. It was admitted that wilful murder and petty treason were excepted, but it was insisted that until the death ensued, which was after the act of pardon took effect, the offence could be considered in no other light than a high misdemeanor, and the pardon operated upon it in that light; and consequently the homicide, which was but the consequence of the offence pardoned, was likewise pardoned; and the above passage from Lord Hale was relied upon. To this it was answered by the recorder, that Hale, in this passage, grounds himself singly on the authority of Cole’s case ; and then the recorder proceeds to show that Cole’s case, as reported, does not warrant the rule in the latitude contended for. The case is examined at length. The doubt was, whether the act could operate so as to pardon a felony which was not completed, the death not having happened when the act went into operation. But the effect of the decision of the court was, that the felony having had its commencement, before the pardon took place, and that species of felony, that is, manslaughter, being pardoned by the act, the prisoner was entitled to the benefit of the pardon, though the felony was not completed, by the death of the party, till after the act; and the pardon should operate in favor of the prisoner, in the same manner as it would have done if the felony had been complete, and in no other manner. And in the principal case (Nicholas’s) it was therefore held, that the pardon of misdemeanors, though at the time the act took effect the offence committed was a high misdemeanor only, did not so operate as to pardon the felony, and the prisonei was convicted and executed.

July 27th.

August 1st

It proceeds manifestly on the ground, that though at the time the pardon took effect, the only offence with which the prisoner was chargeable was the felonious assault, the death not having ensued, and if so, was pardoned by force of the general act, by a subsequent event not caused by any further agency of the prisoner, the crime was not changed from trespass to felony, but was shown to have been a felony from the time of the mortal wound given, and so not included in the pardon. This renders it manifest that they are distinct of-fences, in fact and in law ; the one pardoned being within the terms of the act, and the other not so, being excepted.
Other views of the question might be taken, which we think would lead to the same result. Without however enlarging upon them, I proceed to state the unanimous opinion of the Court, that the offence charged in the Municipal Court, a conviction for which is set forth in the plea at bar, and the capital felony of which the prisoner stands indicted in this Court, are essentially distinct offences in fact and in law, that a conviction or acquittal of the one is no legal bar to an indictment for the other, and that the plea in bar pleaded in this case cannot be supported.
This opinion renders it unnecessary to consider whether a sentence and judgment on the verdict in the Municipal Court, were necessary to enable the prisoner to make this plea successfully ; and we give no opinion upon that question.
The judgment to be entered is, that the prisoner’s plea in bar is not good, and that he answer over to the indictment.[1]
The prisoner was again put upon his trial, and a verdict of guilty being returned, his counsel moved that the jury should be polled ; but the motion was overruled.
The prisoner afterward moved for a new trial, 1. Because after the verdict was declared by the foreman, but before it was recorded, the counsel for the prisoner moved the Court to *516 cause the jury to be severally inquired of if they assented tc the verjict as declared by their foreman, which motion was refused ; 2. Because the jury, after the summing up by the Court and before they had returned a verdict, had communication with one or more persons, besides the officers who by the appointment of the Court had them in charge, and. with one or more of those officers, other than is allowed by law ; and one or more of those officers, and one or more other persons, were in the room of the jury ; and the jury, without the order or knowledge of the Court, and without the assent or knowledge of the prisoner or his counsel, after they were charged with the cause and before they had returned a verdict, were furnished with or had refreshment, to wit, crackers, cheese and cider.
Witnesses were examined, from whose testimony it appear ed, that on the first and second days of the trial, when the jury retired from the court room, the officers having them in charge were directed to furnish them with reasonable refreshments ; that at noon on the third day, the jury retired for deliberation upon the cause, under the charge of two constables, who had been sworn to keep them together and not to speak to them except to ask them if they had agreed, nor to suffer any other person to speak to them ; that the jury agreed upon their verdict at about two o’clock P. M-, but the Court had just before adjourned to half past three ; that, at three, some of the jurors told one of the constables that they were faint, and asked him whether they could not have some refreshment, and the constable thereupon went to a grocer’s shop and procured crackers and cheese and two bottles of cider, which were carried into the jury room by the < constable, and the grocer’s boy ; that while the constable and the boy were in the room, one of the jurors said two bottles were not enough, and the constable told the boy to bring two more ; that the boy brought them and delivered them to the constable, who carried them into the room ; that the cost of the articles was 75 cents, which sum was paid by the constable at the time when the articles were obtained, and was repaid to him on the same day by one of the jurors.
Washburn and Willard argued, that the right of polling the *517 juiy was a common law right of a party, which had been recognised in England from time immemorial ; 2 Hale’s P. C. 299 ; Watts v. Brains, Cro. Eliz. 778 ; 6 Dane’s Abr. 230 ; that it had been introduced in New York, in civil and criminal cases ; Bunn v. Hoyt, 3 Johns. R. 255 ; Root v. Sherwood, 6 Johns. R. 68 ; Blackley v Sheldon, 7 Johns. R. 32 ; Fox v. Smith, 3 Cowen, 23 ; Goodwin’s case, 18 Johns. R. 188 ; that it had indeed been disallowed in this Commonwealth in civil actions, but no argument could be drawn from that in respect to criminal cases, especially capital cases, in which many matters of form are regarded as matters of substance; Commonwealth v. Hardy, 2 Mass. R. 303 ; that this form was in use in England at the time of the settlement of Massachusetts, and if we have no evidence that it has been practised here, this may be because in early times little attention was paid to juridical forms, and at a later period counsel may have been content with the mode commonly used, or the case upon trial have been so clear as to render a departure from it of no avail; and that sometimes it happens, that when the verdict is affirmed in court, an individual juror does not dissent, because he believes himself bound by the verdict agreed upon in the jury room.
In regard to the other ground of the motion, they said, that although in England a verdict is not set aside where the jurors furnish themselves with refreshments, yet that in this Commonwealth prisoners were regarded with more tenderness than in England, and the Court would set the verdict aside, rather than fine the jurors ; Trials per Pais, c. 12 ; 2 Hale’s P. C. 306 et seq. ; Edwards’s Juryman’s Guide, 111, 112 ; Sely v. Flayle, Godb. 353 ; that in the present instance there was no urgent necessity for refreshments ; that cider is an improper liquor to be furnished to a jury ; Brant v. Fowler, 7 Cowen, 562 ; People v. Douglass, 4 Cowen, 26 ; that the verdict, not having been returned into court, could not be considered as agreed on, before the refreshments were taken ; Bac. Abr. Verdict, H; and that although no wrong may have been done intentionally, yet the principle must be established, that there should be no comm .mication, nor opportunity of communication, between the jury and other persons, except by order of *518 court. To show the strictness required in keeping a jury, they cited Knight v. Freeport, 13 Mass. R. 220 ; Sargent v. Roberts, 1 Pick. 337; Commonwealth v. M'Caul, 1 Virginia Cases, 271, 304, 305; Woods v. Hart, 3 Gaines’s R. 96 ; People v. Meany, 4 Johns. R. 294 ; Hix v. Drury, 5 Pick. 302 ; People v. M'Kay, 18 Johns. R. 218.

August 3d.

Austin, attorney-general, and S. D. Parker, county-attorney, for the Commonwealth, said that in England it was not the right of the prisoner to have the jury polled, but of the court, and for the satisfaction of the court; that in Ropps v. Barker, 4 Pick. 239, it was determined by this Court, that the jury could not be polled in civil cases, and there seems to be no good reason for adopting a different rule in criminal trials ; that with respect to the supposed misbehaviour of the jury, the order to the officer to furnish them with reasonable refreshments extended through the trial; but if not, yet as the refreshments were furnished at the cost of the jurors themselves, their misbehaviour, though it- might subject them to a fine, would not vitiate the verdict; Mounson and West’s case, 1 Leon. 132 ; Co. Lit. 227 b ; Trials per Pais, (8th ed.) 248 ; Rex v. Burdett, 1 Ld. Raym. 148 ; St. John v. Abbott, Barnes, 441 ; 3 Wms’s Justice, 96, art. Juries ; Burrill v Phillips, 1 Gallis. 368 ; and that unless the Court had reason to believe that substantial justice had not been done, a new trial would not be granted.
Shaw C. J.
delivered the opinion of the Court. Every step in the conduct of a trial of this nature imposes upon the Court a great responsibility, and requires the fullest deliberation. All the light which can be derived from authority, from argument and discussion, is deserving of the most serious attention.
It was out of regard to considerations of this character, that the Court were disposed to revise the opinion which they formed and expressed during the trial, upon the point which forms the first ground of the motion for a new trial. If any mistake had been made in the course of the trial at bar, it was most desirable that it should be speedily corrected.
1. The question is, whether it is the right of a prisoner to *519 have the jury polled, in order to render it more certain that there is in truth an entire unanimity in their verdict.
This is claimed as one of the established common law incidents of a jury trial. It is a question of some difficulty, to determine how far the practice of polling the jury is a matter of right to the party, or of discretion with the Court.
Lord Hale states, that when the jury say they have agreed, the Court may examine them by the poll. 2 Hale’s P. C. 299. The several authorities cited from New York are all in civil cases, and they rather recognise the practice there as one which the Court may adopt in order to be certain of the unanimity of the jury, than as a right which either party may claim. In the case cited from 3 Cowen, (Fox v. Smith,) it is said that the jury may be polled at the instance of either party. There it was stated to be the uniform practice at the circuit to allow the jury to be polled. In Goodwin’s trial it was allowed at the request of the prisoner, no objection being made and no question raised on the subject.
If the question depended upon a revision and application of legal authorities, the point would certainly deserve a more ample investigation. But it is conceded that this practice has never been used in this Commonwealth, and the application is to introduce a practice not before adopted. Such an application is to the judicial discretion of the Court, and must be supported by some good and substantial reasons of justice or propriety. It is solely a question of practice, and the constant practice of the Commonwealth should be followed unless good reason can be assigned for the change. The forms adopted in a capital trial are of importance, inasmuch as they have a strong tendency, by their solemnity, to impress upon all who are engaged in it, the interesting and highly responsible nature and character of the duties which devolve on them respectively. This is a good reason for retaining many of those, forms, which are observed because they are established ; and in this respect it is true that forms are substance. But the same deference to forms, which induces the Court to adhere to them, because they are usual, would form an argument against, rather than in favor of the introduction of new ones. Whatever may have been the practice m England or in other *520 States, we are satisfied that under neither the colonial, provmcial nor constitutional government of Massachusetts, has the practice in question ever been adopted. It is matter of judicial history, that in adopting the practice of jury trials at common law the practice was in many respects simplified and changed and adapted to the more simple habits of the people.
These modifications have been sanctioned by the highest authority. The constitution, in providing for the continuance of preexisting laws, confines them to those which have here tofore been adopted, used and approved, in the province, colony or state of Massachusetts Bay, and usually practised on in the courts of law, and prescribes that such only shall still remain and be in force. The plain object and purpose of this constitutional provision was to confirm and perpetuate the laws, including the common law, as they had been usually practised on in courts of justice, thereby confirming and sanctioning all such alterations and modifications i»i the practice, as had been sanctioned by actual usage and approbation in courts of justice.
It has been argued, that in respect to the mode of returning a verdict, there is no substantial difference between civil and criminal causes. But in regard to the former the point has been under adjudication in this Court. In Ropps v. Barker 4 Pick. 239, the verdict having been drawn up and put into form at the bar, and a question being made whether the ver' diet, as thus reduced to form, expressed the real intent and meaning of all the jurors, the judge was requested to poll the jury ; which was not complied with. Upon this and othei grounds a new trial was moved for. In regard to this part of the motion the Court say, “ when the jury have found a verdict substantially, it is read to them in form. If any juror does not agree to it when so read, he may express his dissent, and the jury may retire and revise the verdict. But if, when asked in the usual manner whether they agree to the verdict, they all answer in the affirmative, it will be sufficient to authorize it to be recorded.” The Court therefore determined, that it was not the right of the party to have the jury polled, and that when the jury openly, deliberately and unanimously assented to the verdict, when called on for that purpose, it af" *521 forded all the evidence of unanimity which can reasonably be required.
This having been the uniform practice in this Commonwealth, in civil and criminal including capital cases, and the Court not perceiving any considerations of justice, expediency or security to the prisoner in a change of this practice, we are all of opinion, upon a revision of the decision made during the trial, that that decision was correct and affords no ground for setting aside the verdict.[1]
2. The other ground of the motion, which is, that the jury received food and drink, after they had retired to consider of their verdict and before they returned, is entitled to great consideration. The impartiality, purity and strict regularity of jury trials, especially in capital cases, are of the highest importance to the peace, welfare, harmony and security of the community. Whilst a jury trial ought to be so conducted, that a verdict may command entire confidence in all these re spects, it is on the other hand so far deserving of deference, that it ought not to be lightly set aside, on grounds that do not aifect it in these essential particulars.
Before considering the legal grounds of the motion, p .nay be proper to make a preliminary remark in regard to the facts given in evidence. In the view taken by the Court, it is not deemed material whether the order given by the Court to the officers, at previous adjournments, to permit the jury to have reasonable refreshment, extended by implication to the time wften the refreshment was in fact furnished, nor whether the officers and jurors so considered it. That question might be of great importance, in considering how far the conduct of those persons was excusable.
Nor do the Court deem it material, whether the refreshment in question was furnished before or after, the jury had agreed upon their verdict; nor have the Court felt bound to decide these questions of fact.
It is a well settled rule of practice incident to all jury tri *522 als, that after the jury are charged and have left the court to consider of their verdict, they are to be kept by themselves, without refreshment and without communication with others, until they have agreed. Any departure from this rule is an irregularity. But it is not every irregularity which will render the verdict void and warrant setting it aside. This depends upon another and additional consideration, namely, whether the irregularity is of such a nature as to affect the impartiality, purity and regularity of the verdict itself.
Some rules are laid down in books of authority, which state the grounds of this distinction.
If the jury, after they are gone from the bar, and before or after they have agreed on their verdict, eat and drink at their own costs, this shall not quash the verdict, but they shall be fined. 21 Vin Abr. 448, Trial, (G. g.) ; Rex v. Burdett, 2 Salk. 645.
So Lord Hale ; who is of the highest authority upon this and similar subjects. 2 Hale’s P. C. 306. “ If any one of
the jury eat or drink without license of the court, before they have given up their verdict, they are finable for it. But though it be not at the charges of either party, anciently it was held it would avoid the verdict. But at this day the law is settled, that it is only a misdemeanor, finable in them that do it, but avoids not the verdict. But if it be at the charge, for the purpose, of the prisoner, and the verdict find him guilty, the verdict is good ; but if they find him not guilty, and this appears, &c. the verdict shall be set aside, and a new trial awarded.”
Again in Viner': — “But if the jury eat and drink at the costs of a party, after they are gone from the bar, and before they are agreed, their verdict shall not be received, if the verdict be for the same party that gave the meat and drink, for this induces affection. Co. Lit. 227. But if against him, the verdict is good.” — “But in this case, if they eat and drink at their own costs, by assent of their keepers, it being brought by the keepers, it shall not avoid the verdict. Said to be so adjudged divers times.” 21 Vin. Abr. 448, Trial, (G.g■).
And there seems to be sound reason in these distinctions. *523 In the course of a trial, many persons in various departments are necessarily employed in various duties connected with the trial. The law has prescribed those duties, and they are designed to secure impartiality, propriety and dignity in the course of proceedings. A departure from these rules of duty is an irregularity to be repressed. But if the irregularity is of such a nature, that it does not, and in its tendency cannot, affect the rights of a prisoner or other party, whatever other consequence may follow upon such irregularity, it shall not avoid the verdict; because it has no tendency to affect that verdict injuriously to the party against whom it is found.
So in the case of The People v. Douglass, 4 Cowen, 33, in the opinion of Mr. Justice Woodworth, the question upon the misbehaviour of the jury should be beyond all doubt. “ Clearly, we should disregard the fact of eating, as forming any ground for setting aside the verdict; for though this might be a contempt of court, being without their leave, yet an opportunity to take reasonable refreshments would always be granted, at a proper season; and the circumstance of their being obtained somewhat irregularly, could not prejudice the prisoner." He decided to set aside the verdict on the ground of misconduct in the jurors in drinking ardent spirits, which might occasion undue excitement and lead to abuse. The verdict was set aside in that case, by the unanimous opinion of the court, on the ground that some of the jurors, without justifiable cause, and without permission of the court, separated themselves from their fellows, conversed with others on the subject of the trial, and drank ardent spirits.
The case of Brant v. Fowler, 7 Cowen, 562, was determined upon the same principle ; that one of the jurors, without leave, drank some ardent spirits after the cause had been given to the jury.
The case of Knight v. Freeport, 13 Mass. R. 218, was a case of plain practice and persuasion, on the part of a friend of one of the parties, with one of the jurors, after the jury were empanelled.
The case of Commonwealth v. Green, 17 Mass. R. 514, affirmed the power of the Court to grant a new trial in a capital case, and that it ought to be granted, where from misbe *524 haviour of the jury or other cause there should be a good ground for a new trial in civil actions or misdemeanors. But it gives no intimation what species of irregularity would operate as a ground for a new trial. .
The case of Sargent v. Roberts, 1 Pick. 337, stands upon entirely different grounds. There the jury, after a deliberation of several hours, sent a note to the judge, informing him that they were unable to agree, and the judge, following the usual practice here in such cases, returned a written answer giving them further instructions. The verdict was set aside, not on account of misconduct of the jury, but on the ground that the practice then prevailing was improper, and that it was important that all instructions to the jury should be given in open court. It could not be denied that the letter from the judge had a direct influence on the minds of the jurors.
In the case of Commonwealth v. M’Caul, 1 Virg. Cases, 271, in Virginia, it was held that an unjustifiable separation of the jury would be a good cause for setting aside the verdict, on the ground that the jurors might be exposed to improper intercourse and influence. The court in New York, in The People v. Douglass, intimated that this went somewhat further than the common law. Whether it would be adopted as the rule here, it is not necessary to inquire. It is manifest that by such separation the jurors might be thus exposed.
In the case of Hix v. Drury, 5 Pick. 302, where papers improperly went to the jury, the Court held that if they were not handed to the jury by design by the prevailing party, and if the jury did not read them, the irregularity afforded no cause for setting aside the verdict
Some other cases in England may be cited to support the general principle. Rex v. Kinnear, 2 Barn. & Aid. 462, was an indictment for a misdemeanor. The jury separated, without license from the court. It was held, that though the jurors might be punishable, there was not a mistrial and no ground for a motion for a new trial. See also St. John v. Abbot, Barnes, 441. In Duke of Richmond v. Wise, 1 Ventr. 125, the fact of the jury having had wine, it not appearing to have been at the expense of a party, was held not to be a cause for a new trial. And in Co. Lit. 227 b, it is said, if a *525 juror eats or drinks at his own expense, before the jury have agreed, he is liable to be fined, but the verdict is good.
In the trial of Fries, 3 Dallas, 515, the jury were permitted to eat and drink and rest, without requiring the formal consent of the prisoner, and this was upon the ground of a change in the duration of trials.
The result of the authorities is, that where there is an irregularity which may affect the impartiality of the proceedings, as where meat and drink or other refreshment has been furnished by a party, or w'here the jury have been exposed to the effect of such influence, as where they have improperly separated themselves, or have had communications not authorized, there, inasmuch as there can be no certainty that the verdict has not been improperly influenced, the proper and appropriate mode of correction or relief is by undoing what is thus improperly and may have been corruptly done; or where the irregularity consists m doing that which may disqualify the jurors for proper deliberation and exercise of their reason and judgment, as where ardent spirits are introduced, there it would be proper to set aside the verdict, because no reliance can be placed upon its purity and correctness. But •where the irregularity consists in doing that which does not and cannot affect the impartiality of the jury, or disqualify them for exercising the powers of reason and judgment, as where the act done is contrary to the ordinary forms, and to the duties which jurors owe to the public, the mode of correcting the irregularity is by animadversion upon the conduct of the jurors or of the officers, but such irregularity has no tendency to impair the respect due to such verdict.
With these views we have looked at the facts disclosed by the evidence. The act objected to was in some measure venial, as the jury had been accustomed, under prior orders of the Court, to have reasonable refreshment; and this now in question was not taken until after they had in fact agreed on their verdict. The evidence excludes the presumption, that there was either influence or partiality, or any undue excitement. That there was no communication in fact with the lad, is.shown by the same evidence which shows that he was admitted into the room. We are therefore necessarily brought *526 to the conclusion, that whatever other consequences may follow from the facts shown, whether they disclose an irregularity or not, or to what degree the alleged irregularity may he deemed culpable or excusable, it cannot be considered as one of that character, which did or could affect the rights of the prisoner, and therefore that it furnishes no ground for a new trial.[1]

 See Rev. Stat. c. 124. § 4, 5.

 See Slate v. Norvell, 2 Yerger, 24; Commonwealth v. Wade, 17 Pick. 396 Commonwealth v. Curtis, 11 Pick. 134.

 By Rev. Sts. c. 137, § 11, if any person indicted for a felony shall be acquitted of part of the offence charged in the indictment and convicted of the residue, he shall be adjudged guilty of the offence, if any, which shall appear to the court to be substantially charged by the residue of such indictment. See Commonwealth v. Drum, 19 Pick. 479.

 Fellow's case, 5 Greenl. 333. Contra. State v. Harden, 1 Bailey's R. 3; Hamaque v. People, 1 Breese, 109; People v. Perkins, 1 Wend. 91; Jackson v. Hawks, 2 Wend. 619. See State v. Aldea, 1 M‘Cord, 525 ; Martin v. Maverick, ibid. 24.

 See Purinton v. Humphreys, 6 Greenl. 379; Everett v. Youells, 4 Barn. & Adolph. 681; United States v. Gibert, 2 Sumner, 19; Wilson v. Abrahams, 1 Hill (N. York) R. 207.