JAMES BURKE, Plaintiff in Error, v. THE PEOPLE OF THE STATE OF NEW YORK, Defendants in Error.

*Mayhem — Premeditation — Evidence of statements of complainant as to his fear of assault from prisoner.*

In order to bring an act within the fourth class mentioned in the statute relative to mayhem, *i. e.*, to "cut off or disable any limb or member," the cutting or disabling must be done on purpose, and not be the result merely of an unexpected, instantaneous encounter, or of the heat of sudden passion, or of the excitement produced by the fear of ·bodily harm.

In a prosecution for mayhem, it is error to allow the statement, made by the complainant to a third party, in the absence of the prisoner, that he was afraid the prisoner would return and assault him, to be given in evidence, when there is nothing in the case going to justify such apprehension.

*People* v. *McMahon* (2 Parker, 663) followed.

Appeal from the General Sessions, on conviction for maiming.

The plaintiff in error was convicted in the Court of General Sessions of the city of New York, on the 15th day of December, 1874, before Hon. John K. Hackett, recorder, and a jury, of the crime of mayhem, and was sentenced to imprisonment in the State prison for the term of fifteen years.

ᐧ The indictment charged that, on the 24th day of November, 1874, the plaintiff in error did feloniously bite off a piece of the left ear, and disable a member of one James McLaughlin, and that he did feloniously and on purpose maim him, against the form of the statute, etc.

*Peter Mitchell*, for the plaintiff in error. The offense of which the defendant stands convicted, is not mayhem, as contemplated by the statute; he is not brought within the provisions of the statute, either by the indictment or proof. (See *People* v. *Allen*, 5 Denio, 76; *Wood* v. *The People*, 53 N. Y., 511.) Such statutes are to reach no further in meaning than their words. (Bishop on Statutory Crimes, §§ 194, 196, and authorities cited in notes.) The biting off of the outer edge of the fleshy part of the ear, in this case, was neither maiming nor disabling within the provisions of the statute. (See *State* v. *Abram*, 10 Ala., 128.)

ᐧ *B. K. Phelps*, for the defendants in error. There was no error in denying the motion to strike out the testimony as to what McLaugh-

lin said about Burke's coming into the store. The statements were a part of the *res gestœ.* The testimony having been admitted without objection, there was no obligation on the part of the court to strike it out. (*People* v. *McMahon,* 2 Parker, 663.) It was at most entirely discretionary with the court. The offense of maiming may be committed without removing the whole of the limb or member " cut off or disabled." If a permanent injury is inflicted upon the member, it is disabled. (Bishop on Stat. Crimes, § 316, and note; 2 Bishop on Crim. Law, § 1007.)

BRADY, J. :

The injury inflicted upon the complainant is described by the physician who attended him, thus: " The wound was merely the outer edge of the left ear; it was pulled off from there right down to the lower lobe of the ear; it was merely the outer edge, just reaching as far as the cartilage — a simple, clean wound." " This cut was one-eighth of an inch deep all the way round." The circumstances under which the wound was made were these: The complainant and the prisoner had been together, drinking and disputing, but had not come to blows. They separated, the complainant going to a saloon, and the prisoner elsewhere. The complainant, from some fancy that the prisoner would return and assault him, tried to borrow a pistol, and then an ice pick, but getting neither, he took a poker and kept it. The prisoner finally came into the saloon, and presently went up to the complainant, taking hold of the lappel of his coat. It was, it would seem, a social approach. It is apparent that it was not a hostile demonstration — at all events, from the testimony given. The complainant was very much intoxicated then, and there is no doubt that the prisoner was drunk. While in this position, something was said by the prisoner, which is not revealed, and the complainant thereupon struck at him with the poker. They clinched, and the prisoner bit his ear. It would seem, from the evidence of the physician, that he must have seized the outer edge with his teeth, and torn off that part of the complainant's ear, unless, indeed, the complainant tore it off in his efforts to free himself. The complainant did not know at the time that his ear was bitten, and could not say that the prisoner did it. He had, as he stated, another matter with a man before his collision

with the prisoner. He also admitted that he was a quarrelsome man when in liquor.

Upon the trial, the district attorney asked the bar-tender of the saloon the following question : " Do you remember what McLaughlin said about Burke's coming into the store ? " and he answered, " Yes, sir ; he told me, when I wanted him to go and sit down and go to sleep, that he was afraid Burke would come in and beat him. I said ' nobody will beat you ; sit down and go and take a sleep.' " The counsel for the prisoner moved to strike out this answer, upon the ground that he did not hear the question put to the witness, and because of its incompetency. The application was refused, and exception was taken to such ruling. There is no doubt, it should be said here, that the injury received by the complainant was the result of a drunken brawl, and none that it was not inflicted by premeditation — *by lying in wait* for the purpose. The collision which occasioned it was one really begun by the complainant, who, as already stated, on some observation being made, struck at the prisoner with a poker. During their wanderings earlier in the day, they had wordy disputes, as the complainant said, but the prisoner had neither struck him nor threatened to strike him, and the case presents no evidence which warrants the conclusion that he designed to do him any harm other than taking hold of the lappels of his coat, which, as already suggested, was apparently a social and not a hostile action.

The statute under which the prisoner was convicted is as follows : " Every person who, from premeditated design, evinced by lying in wait for the purpose, or in any other manner, or with intention to kill or commit any felony, shall,

1. Cut out or disable the tongue ; or,
2. Put out an eye ; or,
3. Slit the lip, or destroy the nose ; or,
4. Cut off or disable any limb or member

Of another, on purpose, upon conviction thereof, shall be imprisoned in a State prison for such term as the court shall prescribe, not less than seven years." (2 Edmonds' Statutes at Large, 683, 684.)

The court was asked to charge the jury that the fact of lying in wait was not made out by the prosecution, and the court declined so to charge, to which exception was duly taken. The court was also

asked to charge that the jury could find a verdict of assault and battery. This request was granted, but coupled with a statement that the jury could find a verdict of arson, or anything they liked; that they had the physical power to do so, but they should hold themselves responsible to their oath and intelligence to decide according to evidence and the law. The court was also requested to charge the jury that the offense committed was not mayhem, as contemplated by the statute, and the proposition evidently rested upon the fact that a portion of the ear only was destroyed. The court, in answer to this request, said : " The mere fact that the ear was partially taken off — that that should constitute no offense — that the ear should be perfectly destroyed, I shall leave to the jury to say whether any disability was attached to this ear. The ear is a member of the human face. It is a component part of a man's countenance. It is not denominated by the statute. It would be an absurdity to say that the statute limits the application to the entire destruction of this member. In order to provide for that difficulty, the statute says, if any person shall ' cut off or disable any limb or member.' It is a question for the jury to say whether this ear was bit off by this man, and whether there was any disability to the ear from this partial destruction. I shall leave that to them. If they shall so decide, I shall instruct them to convict this man of the charge." The prisoner's counsel excepted to this ruling.

Upon the exceptions thus stated the appeal in this matter depends. In reference to the first, it may be said that the statement of the complainant before the occurence, when the prisoner was not present, was not admissible. It is not necessary to cite authorities for a rule so well established by the law of evidence. The testimony was admitted without objection, it is true, but that arose from the failure of the prisoner's counsel to hear the question, if we are to believe his declaration in open court, and which was not questioned. The statement was injurious to the defense of the prisoner, because he claimed to have acted in self-protection ; and the effect of it was to make the prisoner the aggressor, and to put the complainant in fear of bodily harm, thus justifying his resort to the poker when he could get neither pistol nor ice-pick, when, on his own testimony, there was nothing from which he was author-

ized to draw the conclusion that the prisoner meant to assail him in such way as to put him in any jeopardy. In the exercise of a sound discretion, the testimony should have been stricken out. It was entirely incompetent. (See *People* v. *McMahon*, 2 Park., 663.)

In reference to the second exception, it is clear, beyond all doubt, that the prosecution did not make out the fact of lying in wait, contemplated by the statute. The intention of the prisoner to do what he did, was not evinced by lying in wait for the purpose, according to the testimony, and he was entitled to the benefit of the request made. The refusal to charge as requested was error therefore. It may be that it was not necessary to prove that fact; indeed, it is quite apparent that it was not because the premeditation might be shown " in any other manner," but the prisoner's case was to be determined by the " other manner " when it was not shown that he was lying in wait. The jury could not assume that he was, when the evidence did not warrant it; and the absence of proof of a material fact like that, was a feature in the prosecution to which the prisoner was clearly entitled.

In reference to the third exception, it must be said that there was no evidence that the ear was disabled. The physician did not so state. Its perfection, as an organ of the human frame, was destroyed, but its usefulness for the purpose for which it was designed, was not at all affected, if this case is to be disposed of on the evidence. There was no distinct exception to this part of the answer of the court, given to the request in relation to the necessity of showing the entire destruction of the ear, but the exception was to the ruling upon the request, and it was part of the ruling that it should be left to the jury to say whether any disability was attached to the ear. In this, under the evidence, the learned recorder was in error. The disability was not for their speculation or conjecture, but to be considered and disposed of on the evidence. Whether the offense of which the prisoner stood charged, was within the statute to which reference has been made, it may not be necessary here to decide; because, assuming it to be, the exceptions taken are such as to require a new trial; but it is proper to say that it comes, if at all, within the statute, certainly and only within the fourth class, namely, " to cut off or disable any limb or member; " and to

bring it within that class, the cutting or disabling must be done *on purpose*, that is, with premeditation. It must be designedly done. It must be the intention to do it; otherwise it is not done on purpose; and, it seems to me, must not be, under a proper interpretation of the statute, the result of an unexpected, instantaneous encounter, or of the heat of sudden passion, or of the excitement produced by the fear of bodily harm. The violent intentional disfigurement of the ear is an offense which should be punished, and doubtless with severity; and it may be that such an act would be a felony within the provisions of the statute mentioned, although the legislature has not so expressly declared. It reads, " to cut off or disable." It is not mayhem at common law to cut off an ear. It is not, by the principles of that system, regarded as rendering a man less competent to attack his adversary or to defend himself. (Barb. Crim. Pr., 81; 4 Black. Com., 205; Ros. Cr. Ev., 654 [ed. 1836]; 1 East P. C., 393; *State* v. *Marns*, 1 Coxe, 453; *Comm.* v. *Newell*, 7 Mass., 245.) We think, however, that upon the exceptions discussed, the prisoner is entitled to a new trial. We arrive at this conclusion the more readily, because we think that the observations which accompanied the charge that the jury might find a verdict of assault and battery, were such as in effect to modify the charge on that subject, or destroy its benefit to the prisoner, and thus leave the jury to infer that such a verdict would be at variance with their intelligence and the evidence and the law. It was not so intended, doubtless, and perhaps there may be some inaccuracy in the report of the language used, but we find it in the case, and feel it our duty to allude to it.

Judgment reversed and a new trial ordered.

DAVIS, P. J., and DANIELS, J., concurred.

Judgment reversed, and new trial ordered.