## Commonwealth v. Hazlett.

*Criminal law—Receipt of deposits—Insolvent banker—Pleading—Former acquittal.*

A former conviction on an indictment drawn under the Act of May 9, 1889, P. L. 145, is not a bar to a subsequent prosecution for having, under the same circumstances, and with the same knowledge of insolvency, as in the former case and on the same day, received from another person a deposit of money.

### Demurrer to plea of former acquittal—Effect as admission.

A demurrer to a plea of former acquittal does not admit the correctness of every argument or inference from the record pleaded that the defendant may see fit to put into his plea.

### Pleading—Amendment of indictment—Discretion of court.

There is no reviewable abuse of discretion where the trial judge permits an indictment against an insolvent banker to be amended by adding the words, "and of another person being a partner and joint owner with him." The variance was not material to the merits of the case, nor could it prejudice the defense on the merits.

### Evidence—Knowledge of insolvency by banker.

In an indictment against an insolvent banker the commonwealth is bound to prove defendant's knowledge of insolvency and in most cases this can only be proved by circumstantial evidence.

Proof of defendant's assets at a date prior to the time of receiving the deposit, followed by evidence of losses thereafter sustained by him in the banking business largely in excess of his entire capital, whereby he became insolvent, and this followed by evidence that he continued to be insolvent down to the date of receiving the deposit, would have a legitimate tendency to prove his knowledge of his insolvency. The longer the condition existed the greater the probability of knowledge.

### Evidence—Insolvent banker—Assignor—Assignee's appraisement.

On the trial of an insolvent banker who had made an assignment the inventory and appraisement made by the appraisers at the instance of the assignees and the returns of sales of land made by the assignees and approved by the court are admissible in evidence where the assignment was near in point of time to the deposit, as an aid to the jury in determining the issue as to the insolvency of the defendant on the date in question.

### Evidence—Criminal liability of insolvent banker—Assignee's account.

An assignee's account merely filed is not independent evidence, in a prosecution against the assignor as an insolvent banker that the various items and amounts therein indicated as lost or uncollectible were of no value as assets for payment of creditors. Such account, however, may be used simply to refresh the recollection of one of the assignees in testifying as to differences between the appraised and actual value of certain items.

### Practice, Superior Court—Defective assignment—Omission to set out evidence.

An assignment will be overruled which alleges error in the admission of evidence when it is utterly impossible to determine whether or not error was committed because it omits to set forth the evidence admitted and the evidence in connection with which it was omitted.

### Evidence to rebut criminal intent.

Whenever the motive, intention or belief of a party charged with a crime is in issue, it is competent for such party to testify directly upon that point and, also to the facts and circumstances accompanying an act, which rea-

sonably tend to repel an unfavorable inference which might be drawn from the act if unexplained and it is error to reject the corroborative testimony of other persons as to the same facts and circumstances.

*Evidence—Value of particular building.*

The value of a bank building being in question, an offer is properly rejected to show the valuation put upon another bank by the bank officials, to be followed by evidence that their own building was superior to the other. Such evidence was inadmissible as hearsay and as opening up collateral inquiries not allowable where the question is as to the value of a particular building.

*Evidence—Market value—Particular sales.*

Evidence of particular sales of land in the vicinity is not admissible to establish market value of land in question.

*Evidence—Value of assets—Criminal intent.*

The value of land having a bearing on criminal intent of defendant indicted as an insolvent banker and the commonwealth having introduced evidence of sale by defendant's assignees at a certain price per acre as tending to prove value in association with other and independent proof of values, it was error to exclude an offer by defendant to show a sale made by the vendee of the assignee the next day at an increased price.

If the assignee's sale was to be considered by the jury in determining the main question the evidence offered by the defendant should have been received and considered in connection with it.

*Evidence—Criminal intent of insolvent banker—Effect of partnership as rebutting intent.*

The question being as to the criminal intent of an insolvent banker, it was error to reject defendant's offer to show an alleged partnership in the banking business; that the other partners were liable and that they had property.

It would seem however that a partnership existing years ago between defendant and other parties that had not been legally dissolved as to the public, although nonexistent as to the parties at the time of the deposit, would not fill the offer and would not be relevant.

*Evidence—Bad reputation of witness.*

A bad reputation for truth and veracity may not be established by proof of a good reputation for truth and integrity of the opposing witness.

Argued Feb. 12, 1900.　Appeal, No. 111, April T., 1900, by defendant, in suit of Commonwealth of Pennsylvania against Samuel Hazlett, from sentence of Q. S. Washington County, Feb. Sess. 1899, No. 84, on verdict of guilty.　Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Reversed.　Opinion by RICE, P. J.

Indictment for embezzlement as a banker under the provi-

sions of the act of the assembly approved May 9, 1889, P. L. 145.  Before TAYLOR, J.

It appears from the record that defendant was indicted for embezzlement under the act of 1889.  Verdict of guilty found and sentence on the verdict to pay a fine of $777.08, to undergo imprisonment in the Western Penitentiary for a period of one year and six months.

[At the trial of the case at bar, the defendant interposed three special pleas in bar of former acquittal.  To these pleas the commonwealth demurred, and the court sustained the demurrers in each case and directed the defendant to plead generally.]  [1–3]

During the trial the court, on motion of the district attorney, granted leave to amend the bill of indictment, the order of court being as follows:

[And now, August 15, 1899, upon motion of the district attory, after notice to the defendant's counsel and after hearing, leave is granted to amend the bill of indictment at the above number and term by inserting in the first count of said indictment, immediately following the words, " money of the said Thomas A. De Normandie," the words, "and of another person, being a partner and joint owner with him ; " and leave is also hereby granted the district attorney to enter a nolle prosequi as to the second count of the said indictment.]  [4]

[At the trial the trial judge admitted, over objection of defendant, evidence of the will of Samuel Hazlett, Sr., father of the defendant, showing balance distributed to defendant, to be followed by further evidence of the admissions and statements of defendant showing his entire assets at that time, to be followed with other evidence that the above mentioned account was the only account stated in decedent's estate, and also to be followed by evidence of losses thereafter sustained by defendant in his banking business largely in excess of his entire capital, and for the purpose of establishing his insolvency at the time of said losses ;  and also evidence to show that said insolvency continued, and that defendant was insolvent at the time of receiving the deposit charged in the indictment in this cause.]  [5]

The court admitted an offer of evidence, under objection of defendant, on the part of the commonwealth as follows :

[The commonwealth offers in evidence the inventory and appraisement in the assigned estate of Samuel Hazlett at No. 114, May term, 1898, filed at said number and term April 29, 1898, for the purpose of showing a list of the property turned over by the assignor, the defendant in this case, to his assignees, and for the further purpose, in connection with other independent evidence of value, to show value of property therein listed. Objection overruled; offer admitted and at request of defendant exception noted and bill sealed.

The Court: The appraisement is not conclusive upon the question of values, but it is a step in the proceedings, which the defendant himself has instituted, and showing as it does, the assets in the hands of the assignees for the payment of debts, it is a link in the chain of evidence to prove insolvency. Having been made within a short time after the bank closed its doors, and taken in connection with the deed of assignment, which recites that by reason of losses and misfortunes the assignor was unable to pay his debts, we cannot say it is wholly inadmissible as against the defendant.] [6]

The court also admitted in evidence the following offer of evidence on the part of the commonwealth, under objection of defendant:

[The commonwealth offers in evidence the reports of the sales made by the assignees of the defendant of real estate assigned them by the defendant, filed at No. 114, May term, 1898, together with the proofs of notice made under the direction of the court to creditors and other parties interested in said sales, of twenty days by publication, for the purpose of showing the method of conducting said sales and the manner in which the same were confirmed after full public notice to creditors and others, of not only the price obtained for the real estate sold as aforesaid, but also the procedure observed in making said sales, as bearing upon the adequacy of prices realized, and tending also to prove the value of the defendant's estate in March, 1898; this in connection with the testimony of L. McCarrell, Esq., one of the assignees of defendant.

The defendant, by his counsel, objects to the offer made, for the reason that the reports of sales are not legitimate evidence against the defendant in this case, because the defendant is in no wise bound or affected by the acts of the assignees, inas-

much as he had no control over them, after the deed of assignment was executed and delivered. The fact that the reports of sales were made by the assignees, and that the sales reported were confirmed by the court, in no sense constitutes an admission on the part of the defendant that the prices received by the assignees for the several pieces of real estate were the full value of the property sold.

The offer is objected to generally, for the reason that the evidence offered is incompetent and irrelevant.

Objection overruled, offer admitted and exception noted at request of counsel for defendant, and bill sealed.

By the Court: The objection by the defendant to this offer is not to the purpose of the offer in that it is not proposed to bind the defendant in this case by the introduction of said evidence, but to show what certain of his assets brought as sold by the assignees for the purpose of showing the jury what they brought by this method of sale, to aid them in determining as they must in this issue, whether or not the defendant was insolvent at the date he received the deposit from the prosecutor, but a few days before defendant closed his bank, and made an assignment for benefit of creditors. It is the report of the assignees to the court of what they did as such with the properties turned over to them by the assignor within the reasonable time given them by law to convert the assignor's realty into cash for distribution among his creditors, and we fail to see why the action of the assignees in relation to all his assets should not go before the jury on the one side or the other to enable the jury to determine this question of solvency or insolvency and the assignor's knowledge of his condition in these respects.] [7]

The court also admitted in evidence, offer on the part of the commonwealth, under objection of defendant, as follows:

[The commonwealth offers in evidence the account filed by L. McCarrell and Samuel Hazlett, Jr., assignees of the defendant, on July 29, 1899, at No. 114, May term, 1898, of the common pleas of Washington county, and all the schedules referred to in said account as explanatory of the same, including those which are therein designated as loss or lost or uncollectible, as tending to show that the various items and amounts so marked and indicated were, as parts of the defendant's estate at the time of receiving the deposit alleged in the indictment, of no value

as assets for the payment of creditors, and as tending also to show the insolvency of the defendant at the time of receiving said deposit. This evidence being offered in connection with the testimony of L. McCarrell, one of the said assignees, establishing that said amounts were losses from the appraised value of the estate of the defendant.

The defendant, by his counsel, objects to the offer so made for the reason that the account and schedules offered furnish no legitimate evidence of either the volume of the estate or the value of the items thereof. The defendant is in no wise bound by anything set forth in the said account and schedules. A paper to bind the defendant must be one in which he is in some way connected or for which he is responsible. If it be thought that defendant is affected by failure to file exceptions to the said account, the fact that he failed to file such exceptions should be proved as an independent fact by competent testimony; and not by any paper filed by the assignees.

The offer is further objected to because the testimony of L. McCarrell does not establish or even tend to establish that the amounts referred to in the offer were losses from the appraised value of the estate.

To receive the evidence offered would deprive the defendant of his right to be confronted by the witnesses who give evidence in the case.

The offer is objected to generally, as incompetent and irrelevant.

Objection overruled, offer admitted and exception noted at request of defendant's counsel and bill sealed.

By the Court: The account is not conclusive, but it is a necessary step in the proceedings and tends to show the value of the assets in the hands of the assignees for the payment of debts or the amount realized for that purpose and bears on the question of insolvency in that it is a part of the res gestæ.] [8]

The trial judge overruled defendant's objection to the offer of evidence on the part of the commonwealth, which offer, objection and ruling of the court are as follows :

[The commonwealth offers in evidence the record of the voluntary assignment of George Davis at No. 274, August term, 1892, in the court of common pleas of Washington county, Pa., and in connection therewith the auditor's reports filed in said

estate, for the purpose of corroborating the testimony of R. S. Winters, and for the further purpose of showing that the first amount realized on the George Davis notes, included in the inventory of the defendant's assigned estate, was received by the defendant some time prior to March, 1898; and for the further purpose of furnishing some evidence of the actual value of the list of notes scheduled in the inventory of the defendant's assigned estate as notes indorsed by George Davis.

The defendant, by his counsel, objects to the offer made, for the reason, that it is generally incompetent, irrelevant and inadmissible. And specifically for the reason that a paper in another case cannot be received in this to prove value.

Further because corroboration of testimony of any witness need not be required and should not be permitted. If the paper be to prove, as stated, the amount received by the defendant, either before or since his assignment, it is inadmissible because he is not bound by the paper, and that should be shown otherwise.

Objection overruled, offer admitted and exception noted for defendant at their request and bill sealed.] [9]

The trial judge sustained the commonwealth's objection to the offer of evidence on the part of the defendant, which offer, objection and ruling of the court, are as follows:

[The defendant proposes and offers to prove by his daughter, a witness produced and sworn, that immediately prior, and for some months prior to the date of the publication of the statement offered in evidence by the commonwealth, that he, the defendant, was in very bad health, as he had been from time to time for some years past, the condition of his health being such that his physician, who is now dead, notified him, defendant, from time to time, that unless he discontinued business, his sickness would kill him. And that such notification was given for the second or third time, immediately prior to the publication of the aforesaid statement. · That his said sickness was such, that for a long time prior to the publication of said statement, he was unable to give proper attention to his business, and was, therefore, compelled to quit. This for the purpose of showing that the discontinuance of the defendant's business was not the result of his insolvency, and in denial and contradiction of the testimony of the commonwealth tending to show insolvency

from such discontinuance of business, and as explaining the evidence of the commonwealth as to the condition of his deposits with eastern correspondents and others.

Objected to (1) because the evidence offered is incompetent and irrelevant to the issue; (2) it is not responsive to any evidence produced by the commonwealth or to the purposes for which the same was introduced; (3) the evidence does not tend to disprove the issues involved in this case or to disprove conscious insolvency as charged in the indictment; (4) the defendant's reasons for quitting business and closing his bank are not issues involved in this case.

Objection sustained, offer overruled and at request of defendant's counsel exception noted and bill sealed.

The Court: The statement offered in evidence by the commonwealth as to why he closed his bank was offered alone for the purpose of showing the defendant's own statement of his assets and liabilities at that time.] [10]

The court sustained the commonwealth's objection to the offer of evidence on the part of the defendant, which offer, objection and ruling of the court are as follows:

[The defendant offers to prove that the banking house or office of Samuel Hazlett, which it has been shown was reorganized as a copartnership, consisting of Mrs. Grayson, Mrs. Brown, Mrs. Vowell, Robert W. Hazlett, Mary Hazlett (widow of Samuel Hazlett, deceased) and the defendant, in 1886, had not discontinued business until March, 1898, and that the copartnership consisting of the partners hereinbefore mentioned had not up to that time, indeed has not up to the present time, been dissolved. That no contract or agreement of dissolution had been made, no notice thereof published. This to meet the evidence of Howard Hazlett that the amount of $6,000 belonging to each partner had not been sold and transferred by Robert W. Hazlett and sisters to the defendant in 1877, and shows said testimony subject to the weight the jury may give thereto is untrue. And generally for the purpose of showing that the said partners with such property as they may be proved to own and possess is liable to the payment of the debts of said banking house as they existed in March, 1898.

The foregoing offer is objected to because (1) it is incompetent and irrevelant; (2) it is not responsive to any testimony

elicited by the commonwealth from Howard Hazlett, whose testimony referred to in the offer was to show the admissions of the defendant as to his assets in 1877, other matters of his testimony referred to in the offer having been drawn from him by defendant's counsel on cross-examination; (3) evidence of the separate estates of persons other than the defendant alleged to be interested in the bank is not competent to relieve the defendant from the consequences of taking the prosecutor's money as a deposit with knowledge that the bank was then insolvent; (4) The evidence is contradictory of defendant's published statement already in evidence and admitted by him to have been made giving the assets of the bank as his own and likewise contradictory of the deed of assignment made by himself and wife, assigning all the assets of the bank for the benefit of creditors as his individual property. (5) The proposed evidence raises an issue distinct from and collateral to the one on which defendant is being tried.

Objection sustained, offer overruled and at request of defendant's counsel exception noted for defendant and bill sealed for defendant.

By the Court: The evidence offered under the defendant's proposal might be admissible in a civil suit by a creditor of this alleged partnership against it to recover the amount of a deposit in said bank, but the defendant in this trial having stated he turned over all his assets to his assignees and of the bank, and the vital question here being his solvency, or insolvency at a particular date, even if Howard Hazlett had testified as set forth in said offer, which he did not do, the evidence could not possibly have any bearing on the issue now being tried.

Samuel Hazlett is admitted to have been at the head of this bank and to have received the prosecutor's deposit and under the act of assembly, if he was but an officer of said bank and took a deposit when he, or the bank, was to him known to be insolvent, he could be convicted of the offense.] [14]

The court sustained the commonwealth's objection to the offer of evidence on the part of the defendant, which offer, objection and ruling of the court are as follows:

[The commonwealth having proved that the assignees of the defendant sold the Smith or East Bethlehem township farm, for the sum of $56.00 per acre, for the purpose of fixing the

value of said farm in March, 1898, the defendant by his counsel, now offers to prove by the witness on the stand, that on the next day after the said sale by the assignees, the coal under said farm was sold for the sum of $42.00 per acre, and that immediately after said coal was sold, the surface of said farm, exclusive of said coal, had a fair market value of $35.00 per acre; and also to prove that no change took place in the market value of said farm between the time of the said sale by the assignees and the time of the sale of said coal.

This for the purpose of showing that the sale by the assignees was not a fair test of the value of said farm, and as tending to show the market value thereof in March, 1898.

The commonwealth objects to the foregoing offer for the following reasons, viz :

1. The evidence offered is irrelevant to the issues on trial and is generally incompetent.

2. The sale of the coal referred to in the offer is separate from the surface and an estimate of the surface value at the times designated in the offer is not competent evidence to prove the value of the land as a whole in possession of the defendant in March, 1898.

3. The evidence already before the court shows that in and about March, 1898, there was no market for coal in the vicinity of this land separate from the rest of the land, and the evidence offered is not a proper standard for ascertaining the value of the land as a whole in March, 1898, the circumstances and conditions being changed.

Objection sustained and offer overruled and at request of counsel for defendant exception noted for defendant and bill sealed.

By the Court : The farm being sold by the assignees as a whole and before there was any known market for the coal separate from the surface, the offer does not propose to employ the true test of the market value at the time the deposit in this case was taken.] [15]

The court charged the jury in part as follows :

[Where a witness is called and gives testimony of importance, bearing on the issue in the case, and damaging to the opposite side of the case, and a party in interest on the opposite side goes

upon the stand and attempts to break the force of the testimony of that witness, by testimony characterizing said witness in effect a forger and liar, and the party calling the witness so attacked successfully repels said attack on reputation by calling witnesses who say his reputation for honesty and integrity, truth and veracity is good, and you are satisfied from all the evidence in the case that these character elements are good, you have a right, gentlemen, to take such unsuccessful attempt to stigmatize into consideration on the question of the assailant's own reputation for truth and veracity, if in doubt, as to testimony given by him when you come to weigh it.] [16] . . . .

[Something has been said in this case during the trial as to whether a partnership was legally dissolved in 1877 when a deed passed between brothers and sisters for their interests in their father's estate left them.   We instruct you, so far as this case is concerned, the property named in that deed and the question whether that partnership was legally dissolved or not, is not to be considered by you in determining whether the defendant on March 12, 1898, was insolvent or not.   The list of property which the defendant owned and the value of which you are to consider, is that which was contained in the statements made through the newspapers to his creditors and the few items of personal property which were named by the defendant as accidentally omitted from the statement when it was prepared for publication and which was turned over to the assignees.   No other property can be considered by you, as the defendant has not claimed or shown that he owned any other property that he himself could have applied to the payment of his debts.] [17]

Verdict of guilty and sentence thereon.   Defendant appealed.

*Errors assigned* among others were (1–3) in sustaining the demurrers to the special pleas in bar, of former acquittal, interposed by the defendant.   (4) Granting leave to amend the bill of indictment, reciting order of court.   (5–10, 14, 15) To rulings on evidence, reciting same.   (16, 17) To portions of the judge's charge, reciting same.

*Jno. C. Bane* and *W. W. Arnett*, for appellant.—By demurring to the three special pleas in bar, of former acquittal, en-

tered by the defendant, the commonwealth admitted the facts
pleaded, and referred the question of the legal sufficiency of
these facts to the decision of the court: Commonwealth v. Trim-
mer, 84 Pa. 65.

Where a party is accused of a crime, and acquitted by the
verdict of a jury, such acquittal will be a complete protection
against any subsequent prosecution for the same offense: Dinkey
v. Commonwealth, 17 Pa. 126 ; Heikes v. Com., 26 Pa. 513.

By their verdict, the jury found that, particularly, on March 12,
1898, and also that, within two years prior to the date of the
finding of the indictment, the defendant was not insolvent, or,
otherwise that, if he were insolvent, he did not have knowledge
of his insolvency. The same evidence, necessary to support
the indictment in the case at bar, would have been sufficient
to procure a legal conviction in the case at No. 90, February
sessions. The only question upon both indictments was that
of the solvency or insolvency of the defendant, and that of
his knowledge of insolvency.

The verdict of the jury, in the case of No. 90, February ses-
sions, determined the questions of the defendant's solvency, for
the entire period of two years prior to the date of the finding
of the indictment: Altenburg v. Com., 126 Pa. 602. Another
authority upon this question is that of People v. Allen, 1 Park-
er's Cr. Rep.(N. Y.) 445.

Attention is also called to the cases of Commonwealth v.
Dunstor, 145 Mass. 101, and Commonwealth v. Robinson, 126
Mass. 259, and cases there cited.

*Albert S. Sprowls*, with him *Alex. M. Templeton*, district
attorney, *T. Jeff. Duncan* and *John H. Murdoch*, for appellee.—
It is true that the commonwealth demurred to the three spe-
cial pleas in bar, entered by the defendant, but it does not fol-
low from this that the commonwealth admitted the deductions
drawn therefrom by the defendant: Com. v. Trimmer, 84 Pa.
65 ; Com. v. Roby, 25 Mass. 496.

So, in a recent case, the doctrine was recognized that such
plea is no bar unless the facts charged in the second indictment
would have warranted a conviction on the first : Rex v. Taylor,
3 B. & C. 502.

In Com. v. Sullivan, 104 Mass. 552, it is held: "The steal-

ing at the same time and by one taking of several articles belonging to different persons, is larceny of the whole and of each article, and may be indicted either in one aspect or the other, as one entire crime or as several distinct offenses. If indictments or counts for one taking of several articles are unreasonably multiplied, the court in superintending the course of trial and in passing sentence, will see that justice is done and oppression prevented."

In each indictment a separate and distinct offense is charged, and the evidence necessary to convict under one would not support a conviction under the other: Com. v. Rockafellow, 3 Pa. Superior Ct. 588.

OPINION BY RICE, P. J., July 26, 1900:

1. We were required in the case of Commonwealth v. Rockafellow, 3 Pa. Superior Ct. 588, to decide, whether a former conviction on an indictment drawn under the Act of May 9, 1889, P. L. 145, was a bar to a subsequent prosecution for having, under the same circumstances, and with the same knowledge of insolvency, as in the former case, and on the same day, received from another person a deposit of money. It was held in a carefully considered opinion by our Brother SMITH that the indictments charged two distinct offenses and that the plea, autrefois convict, could not be sustained. He said: "A verdict and judgment, whether of conviction or acquittal, upon an indictment, is a final adjudication of the question at issue—the guilt or innocence of the defendant. This question being res judicata cannot again be tried. It is this principle that gives effect to the plea of autrefois convict and autrefois acquit. To sustain either plea to a subsequent indictment, the identity of the offenses charged in the two indictments must be shown, and it must appear that the evidence necessary to a conviction on the latter would be sufficient to convict of the offense charged in the former." To warrant a conviction of this statutory offense the commonwealth must prove beyond a reasonable doubt that the defendant was a banker; that he was actually insolvent at the time he received the money of the person mentioned in the indictment; that he knew himself to be insolvent at that time, and that he received the money as a bank deposit. A defect in the proofs as to any one of these essentials must necessarily

result in an acquittal; it is clear, therefore, that an acquittal on an indictment charging the receipt of a deposit from A. on a certain day cannot be pleaded to an indictment charging the receipt of another deposit from B. on the same day as a conclusive adjudication that the defendant was not insolvent on that day or that he did not know that he was insolvent. To quote further from Judge SMITH's opinion: "As logically demonstrated by Mr. Justice DEAN, the receipt of a deposit, under the circumstances described, is through an implied false representation. Yet it cannot be said that the obtaining of money from A. by a false pretense includes the obtaining of money from B. by the same false pretense, by reason of the fraudulent purpose common to both. As well might it be held that the larceny of the goods of A. includes a larceny of the goods of B. by reason of the felonious purpose common to both." As a general rule, a demurrer admits the facts pleaded and refers the question of their legal sufficiency to the court, but to give it this effect the facts must be well pleaded. The demurrer does not admit the correctness of every argument or inference from the record pleaded that the defendant may see fit to put into his plea of former acquittal. The rule upon this subject was thus stated in Commonwealth v. Trimmer, 84 Pa. 65: "Whether the former acquittal was for the same offense depends on the record pleaded, and not on the argument or inference deduced therefrom. The defendants plead in bar a former trial on no other indictment than the one set forth in the plea. If that record shows that the evidence necessary to support a conviction on the present indictment would have been insufficient to procure a legal conviction on the former, the plea of autrefois acquit is not sustained." See also Commonwealth v. Roby, 29 Mass. 496, Rex v. Taylor, 3 Barn. & Cress. 502, and Commonwealth v. Allegheny Valley Ry. Co., 14 Pa. Superior Ct. 336, and cases there cited. The court committed no error in applying this general rule to the case at bar and overruling the special pleas.

2. In the indictment as originally drawn the money deposited was described as the money of Thomas A. De Normandie. On notice to the defendant and after hearing, the court permitted the indictment to be amended by adding the words, "and of another person being a partner and joint owner with him."

In thus amending the indictment so that there would be no variance as to the ownership of the deposit, we discover no abuse of discretion. The variance was not material to the merits of the case, and it is impossible to see how the defendant could have been prejudiced in his defense upon the merits by the amendment.

3. It is urged that the only proper and legal course for the commonwealth to pursue in making out its case was, to show what property the defendant owned on the date of the deposit, and the value of that property, and then to show the amount of his indebtedness. This assumes that the only question at issue was whether he was insolvent on a particular day. But this was not the only question. The commonwealth was bound to prove also that he knew he was insolvent, and in many cases, if not in most cases, such knowledge can only be proved by circumstantial evidence. Proof of the defendant's assets at a date prior to the time of receiving the deposit, followed by evidence of losses thereafter sustained by him in the banking business largely in excess of his entire capital, whereby he became insolvent, and this followed by evidence that he continued to be insolvent down to the date of receiving the deposit, would have a legitimate tendency to prove his knowledge of his insolvency. The longer this condition existed the greater the probability of his knowledge. The offer embraced in the fifth assignment was competent for this purpose, if for no other. Again, evidence of the defendant's assets when he went into the banking business followed by evidence of heavy losses thereafter—in this case alleged to have been in excess of his entire capital—would seem to have a legitimate bearing upon the question of the value of his assets, and, therefore, of his solvency on the day in question. It might not prove the whole case, but that is not a valid objection to the admission of relevant testimony. Whether or not the evidence came up to the offer we cannot say, for it is not printed. It is highly important that the appellate court, in ruling upon an exception to the admission of an offer of this kind, should have before it the evidence adduced under the offer. But in this case it is sufficiently clear that if evidence was given of all that was offered to be proved, it was competent.

4. The deposit in question was made on March 12, 1898.

Six days later the defendant closed his bank, and on March 31 made an assignment for the benefit of creditors in which he recited that by reason of losses and misfortunes he was unable to pay his debts.    The question raised by the sixth and seventh assignments of error is, whether the inventory and appraisement made by the appraisers appointed at the instance of the assignees and filed on April 29, 1898, and the returns of sales of land made by the assignees and approved by the court were admissible in evidence.    We have no doubt upon that question.    This was not mere hearsay evidence, nor were the facts sought to be established by it so remote from the deposit as to furnish no assistance in determining the question of the defendant's insolvency on that date.    These were not adverse proceedings; they were instituted by the defendant himself for the conversion of his assets into cash, and because of his admitted inability to pay his debts.    The mode of conversion and the person to carry it out were of the defendant's own selection.    It has been said repeatedly that the assignee for the benefit of creditors is the representative of the debtor.    He has been spoken of " as the hand of the assignor through which the latter distributes his property :" Wright v. Wigton, 84 Pa. 163.    And, whilst it is not contended, that there is any legal presumption, conclusive or prima facie, that the convertible value of the assets, as determined by these proceedings, was the true market value on the date of the deposit, yet, where the assignment was so near in point of time to the deposit, the evidence was properly received, in connection with the assignment and other evidence, as an aid to the jury in determining the issue as to the insolvency of the defendant on that date : Com. v. Smith, 4 Pa. Superior Ct. 1 ; State v. Beach, 147 Ind. 74 (a case exactly in point) ; State v. Cadwell, 79 Iowa, 452.

5. We are of opinion that an account filed by the assignee for the benefit of creditors, not shown to have been confirmed or to have been expressly or impliedly acquiesced in by the assignor, is not independent evidence in a prosecution of this kind, that the various items and amounts therein indicated as lost or uncollectible were of no value as assets for the payment of creditors.    If, however, the account in question was offered and used simply as a memorandum to refresh the recollection of the witness, one of the assignees, in testifying as to the dif-

ferences between the appraised and the actual value of certain items, we cannot say that there was reversible error in overruling the objection to the offer embraced in the eighth assignment. As neither the account nor the evidence of L. McCarrell referred to in the offer is printed, we do not sustain the assignment. We have, however, sufficiently indicated our views as to the admissibility of an account, merely filed, as independent evidence upon the question of the value of the assets.

6. Without having before us the evidence admitted under the offer embraced in the ninth assignment and the evidence in connection with which it was admitted, it is utterly impossible to determine whether or not error was committed. For this reason the assignment is overruled. See Rules 17 and 24, also 1 P. & L. Dig. of Dec., etc., Col. 872.

7. Was the defendant solvent or insolvent, and, if insolvent, did he know it, when he received the prosecutor's deposit on March 12, 1898? These were the issues. If the fact that he closed his bank and suspended business on March 18, was relevant to either of these issues of fact, as it undoubtedly was to the latter issue, it would seem clear, that evidence coming from the proper source, which might convince a jury that he closed his bank because the condition of his health was such that he could not give proper attention to the business and could not continue it without danger to his life, would also be relevant. In the absence of such explanatory evidence a jury might very naturally infer from his conduct that it was because of his consciousness of his insolvency and of his inability to go on longer, that he closed his bank and discontinued business; in other words, that he was impelled by the same motive that moved him to make an assignment a few days later. Whenever the motive, intention or belief of a party charged with a crime is in issue, it is competent for such party to testify directly upon that point, and also to the facts and circumstances accompanying an act, which reasonably tend to repel an unfavorable inference which might be drawn from the act if unexplained. But the fact that the accused is a competent witness under the law and may testify directly as to his motive, intention or belief is not a valid reason for rejecting the testimony of other witnesses as to the facts and circumstances which tend to illustrate his motive or intent. Nor is the error in the re-

jection of such testimony cured by subsequently permitting the accused to testify to the facts which he has offered to prove by other witnesses. The testimony of one so deeply interested is looked upon with suspicion. It might avail little for the defendant in the present case. to testify that he ceased business because of his ill health and in obedience to the advice of his physician, and not because of his knowledge or belief that he was insolvent, if he could not, or would not, produce the corroborative testimony of witnesses cognizant of the facts that he was in ill health and that the physician had given him such advice. The evidence embraced in the offer which is the subject of the tenth assignment might not shed any light upon the question whether the defendant had sufficient assets at the time he received this deposit to meet and pay his liabilities in the regular course of business, as counsel for the commonwealth truly say, but we are clearly of opinion, that, if believed by the jury, it would have had a legitimate tendency to repel the inference that it was because of his knowledge or belief that he was insolvent that he closed his bank. It might not have had great weight in view of the other circumstances, but that was for the jury. All that we decide is, that the testimony was relevant.

9. The defendant's offer embraced in the eleventh assignment was not to prove his belief, and the grounds of his belief, as to the value of his bank building, but to prove its value by first showing the valuation put upon another bank building by the bank officials, and following this by evidence that his own building was superior in all respects to the other. The evidence was not admissible for the purpose stated in the offer, first, because the evidence as to the value of the other building was hearsay, and second, because the admission of the evidence would have opened up collateral inquiries as to the actual value of the other building and the comparative merits of the two buildings, which, in general, is not allowable under our decisions in a case where the question is as to the value of a particular building. There is nothing to make this case an exception to the general rule that a party cannot offer evidence for a specified purpose and complain when it is rejected that it was legitimate for another and distinct purpose.

10. The general rule in Pennsylvania is that evidence of par-

ticular sales of land in the vicinity is not admissible to establish market value of the land in question. The doctrine upon this subject has been thus stated: "The selling price of lands in the neighborhood, at the time, is undoubtedly a test of value, but it is the general selling price, not the price paid for particular property. The location of the land, its uses and products, and the general selling price in the vicinity are the data from which a jury may determine the market value. The price which, upon a consideration of the matters stated, the judgment of well-informed and reasonable men will approve, is the market value. A particular sale may be a sacrifice compelled by necessity, or it may be the result of mere caprice or folly; if it be given in evidence, it raises an issue collateral to the subject of inquiry, and these collateral issues are as numerous as the sales:" Pittsburg, etc., R. Co. v. Patterson, 107 Pa. 461. There was, therefore, no error in rejecting the offer recited in the twelfth assignment. Substantially the same reasons apply to the offer recited in the thirteenth assignment, it not being made to appear on this appeal that it was responsive to anything put in evidence by the commonwealth. Whether it was so or not could only be determined by an inspection of the evidence introduced by the commonwealth and that has not been brought up and printed.

11. A different question is raised by the fifteenth assignment. The commonwealth had put in evidence the assignees' returns of sales in which it appeared that the Smith farm had been sold by them for $56.00 an acre. It is true that these returns were not offered and admitted as independent and exclusive evidence of values of the real estate sold, "but," as the counsel for the commonwealth say in their brief, "as tending to prove the same in association with other independent proof of values." To meet this specific item of evidence, the defendant offered to prove that the next day after the Smith farm was sold by the assignees, the coal under the same was sold for $42.00 an acre, that the surface exclusive of the coal had a fair market value of $35.00 an acre, and that no change in the market value of the farm had taken place in the mean time. The offer was rejected for this reason: "The farm being sold by the assignees as a whole and before there was any known market value for the coal separate from the surface, the offer does not propose

to employ the true test of the market value at time the deposit in this case was taken." We are unable to assent to the correctness of the reason given for the ruling, or to the ruling itself. The ruling might be correct if this were a proceeding to surcharge the assignees. But in this issue and in view of the commonwealth's evidence, the fact that the assignees sold the farm as a whole for a certain price is no reason why the defendant should be precluded from giving evidence of the same general nature to show the separate market values of the coal and the surface. To exclude the testimony upon the ground that the assignees' sale was made before the coal separate from the surface had a known market value involved the assumption of a fact not admitted by the defendant. Indeed he offered to prove that there had been no change in the market value of the farm over night,—a fact that the jury might reasonably have inferred in the absence of evidence to the contrary. We are of opinion that the defendant was entitled to the benefit of the testimony for the purpose for which it was specifically offered, namely, to meet the evidence as to the price received by the assignees at the sale of the same land the day before, and to show to the jury that the assignees' sale was not a conclusive test of its value. If the returns of sales had not been put in evidence we are not prepared to say that the evidence under consideration would have been admissible; but if the assignees' sale was to be considered by the jury in determining the main question, we see no good reason why the evidence offered by the defendant should not have been received and considered in connection with it.

12. The fourteenth and seventeenth assignments may be considered together. Briefly, the defendant's offer was to show that the banking copartnership which was formed in 1866 and of which the defendant was a member had not discontinued business and had not been dissolved at the time of the receipt of the deposit in question. This evidence was offered " for the purpose of showing," inter alia, " that the said partnership with such property as they may be proved to own and possess is liable to the payment of the debts of said banking house as they existed in March, 1898." In rejecting this evidence the learned judge said: " The evidence offered under the defendant's proposal might be admissible in a civil suit by a creditor of this al-

leged partnership against it to recover the amount of a deposit in said bank, but the defendant in this trial having stated he turned over all his assets to his assignees and of the bank, and the question vital here being his solvency or insolvency at a particular date, even if Howard Hazlett had testified as set forth in said offer, which he did not do, the evidence could not possibly have any bearing on the issue being tried. Samuel Hazlett is admitted to have been at the head of this bank and to have received the prosecutor's deposit, and under the act of assembly, if he was but an officer of said bank and took a deposit when he, or the bank, was to him known to be insolvent, he could be convicted of the offense." The same idea was conveyed in the general charge. For present purposes it must be presumed, that the defendant could have sustained his offer by evidence of the facts therein alleged, and, as he has not brought up the evidence which preceded the offer, we are justified in assuming also, that the facts stated by the learned judge in his ruling upon the offer were established by evidence or conceded. Stated in the most favorable terms the proposition established by the ruling seems to be this : If the assets of a banking partnership—the business of which is carried on by and in the name of one of the partners—together with the assets of the managing partner are insufficient for the discharge of the debts of the partnership, the facts, that the other partners are individually liable for the debts, and that they have property, no matter of what value, are immaterial, and, therefore, not admissible in evidence in defense to an indictment under the act of 1889 of the managing partner. There might be a case in which this would be true, as, perhaps, where the liability of the other partners, as between themselves, was limited by the articles of copartnership to the partnership assets, or when the insolvent condition of the concern, as distinguished from the insolvency of the members, had been brought about by the acts of the managing partner in fraud of the other members. Be that as it may, is it true that the solvency of the other members would be an immaterial fact in a case where no such qualifying circumstances appear, and where the managing partner has a right to call upon the other partners to contribute proportionally with him to the payment of the debts of the concern? It is to be observed that this is not an offense in which the intent

of the accused is immaterial. This was very clearly shown by Justice DEAN in Commonwealth v. Junkin, 170 Pa. 194. He says: "The essential element of crime, unless otherwise declared by statute, is the intent to commit it, or the wilfulness of it. The legislature can declare an act a crime, and make it punishable, regardless of the intent, but this statute will not bear such interpretation; its aim is to punish dishonesty; the moral guilt which prompts to falsehood and deception; for there is necessarily moral guilt on the part of a banker, who, with knowledge of insolvency, receives as a bank deposit the money of a customer; by necessary implication when he so receives it, he says to the depositor, 'My bank is solvent, and is able to repay this amount when called for;' if such were not the implied representation, relied on, too, by the depositor, he would not leave his money. To constitute the criminal intent, it is not, however, necessary that the banker at the time intended to defraud the depositor; his intention to repay may have existed; it is the concealment of his present, to him known inability to pay, and in that condition, receiving, as part of the funds of the bank, the depositor's money, which he knows, without the false representation, he would not receive, that constitutes the criminal intent." This doctrine is of general application. Let it be supposed then, that although the managing partner knows that his assets are insufficient to pay his individual debts and the debts of the firm, yet that he also knows that his assets together with those of his copartners, who are in duty bound to him to contribute proportionately to the payment of the debts, are amply sufficient to discharge every firm obligation as it falls due, would not these facts have some bearing upon the question of his criminal intent? We think they would. It seems to us that the learned judge construed the law too rigidly in holding that an officer of a bank who takes a deposit when either he or the bank was known to him to be insolvent can be convicted of the offense. The word "he" in the clause "with the knowledge that he, they or the bank, is at the time insolvent" relates to the banker or broker, not to the officer of a bank. The word "bank" in the same clause includes in its meaning a private as well as an incorporated bank, but when applied to the former kind of a bank it clearly means the persons associated together in the banking business,

who, as between themselves, are legally bound to contribute proportionally to the payment of the debts, and, as between them and creditors, are jointly and severally liable for the same. Thus construing the act the solvency or insolvency of one member of a general copartnership, even though he were the managing partner, would not necessarily and under all circumstances be the vital and controlling question in an indictment against him. Without further elaboration we conclude that the offer should have been admitted. If the evidence did not come up to the offer the court could have excluded it from the jury's consideration; but we must assume that it was made in good faith. We remark, however, in order to prevent misunderstanding, that mere proof that a partnership existing years ago between the defendant and other parties had not been legally dissolved as to the public—in other words, that they were liable to creditors as if they were partners although they were not in fact partners at the time of this deposit—would not fill this offer and would not be relevant.

It is urged that the offer was properly rejected, or, at least, that no harm was done the defendant by its rejection, because, to adopt the language of counsel, it was not coupled with an offer " to prove that either of the alleged partners was worth a dollar, or that with the assistance of their properties and effects any assets whatever would be added to the bank." This objection was not made in the court below. Moreover the offer, fairly construed, included evidence that the alleged partners owned and possessed property liable for the debts of the firm, and one of the objections to the offer was that evidence of the separate estates of persons other than the defendant alleged to be interested in the bank was not competent. After the court clearly and unequivocally ruled that such evidence could not possibly have any bearing on the issue being tried, the defendant was not bound to consume time and encumber the record with further offers upon that branch of his defense, in order to obtain a review of the ruling.

13. If the defendant gave relevant testimony to the effect that a paper in evidence, alleged to have been made by him, had been forged by a witness called by the commonwealth, his failure to make good the assertion or to show probable cause for it, might very properly be considered by the jury in passing

on his veracity. A willful misrepresentation by a party testifying in his own behalf in a material particular throws suspicion upon his whole testimony. This is true of any witness. But we fail to see how his bad reputation for truth and veracity could be established by proof of the good reputation of the opposing witness for integrity and truth. So far as we can see without having the evidence before us, this latter mode of sustaining the testimony of a witness, whose general character in the speech of the people had not been attacked in the ordinary way, and of discrediting the opposite party was not allowable. See Braddee v. Brownfield, 9 W. 124 ; Wertz v. May, 21 Pa. 274.

14. The court properly refused the defendant's ninth and tenth points (eighteenth and nineteenth assignments). The answer given to the latter is not as clear as that given to the former, but we do not think it fairly bears the construction the defendant's counsel put upon it. Doubtless any obscurity now suggested with regard to its meaning will be cleared up if the same point is presented on another trial, and if the court deems it necessary to give a reason for negativing a proposition so plainly erroneous.

The first nine, the eleventh, twelfth, thirteenth, eighteenth and nineteenth assignments are overruled. The tenth, fourteenth, fifteenth, sixteenth and seventeenth assignments are sustained.

The judgment is reversed and a venire facias de novo awarded.