# Whiting Manufacturing Company v. Bank.

*Evidence—Record of assigned estate to show precedent insolvency.*

The record of an appraisement, showing the condition of an estate at
the time of an assignment, is some evidence of the solvency of the assignor
at the time when sale was made on representations of solvency at a period
not greatly remote from the assignment.

Representations of solvency were made January 27, and an assignment
in May of the same year; *held*, that the record of the assigned estate was
admissible in evidence as an aid to the jury in determining the issue as to
insolvency at the date when the representations of solvency were made.

*Evidence—Inferences need not be disproved.*

A mere inference as to the existence of notes imposes no obligation on

plaintiff, seeking to rescind a sale of goods levied upon, to return such notes or file same in court, or to disprove a status which may never have existed, in order to enable it to rescind.

*Contract—Lex loci.*

An order for goods accepted in New York where the goods were delivered to the purchaser, establishes a New York contract governed by the lex loci.

*Evidence—Foreign law must be proved—Charge of court.*

Where a crucial question of the case is whether the law of New York is that, if a vendor would rescind a sale, he must show the purchaser of the goods one knowingly insolvent and having a present intention not to pay for them, it is necessary either that the law of the foreign state shall be stipulated as admitted, or it must be proved what that law is.

There being no evidence before the court below as to what the law of New York was. it was error for the trial judge to charge that it was thus or so.

Argued Oct. 16, 1900. Appeal, No. 2, Oct. T., 1900, by defendant, in suit of Whiting Manufacturing Company against Fourth Street National Bank, from judgment of C. P. No. 1, Phila. Co., March T., 1898, No. 990, on verdict for plaintiff. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Reversed. Opinion by BEAVER, J.

Interpleader.  Before BRÉGY, J.

It appears from the record that Williams & Ulmer confessed judgment in favor of the Fourth Street National Bank. The Whiting Manufacturing Company claimed certain of the goods thereupon taken in execution, and an issue of interpleader was framed in which the Whiting Manufacturing Company was plaintiff and the Fourth Street National Bank defendant.

[At the trial the court admitted in evidence, under objection of plaintiff, the record in the assigned estate of Williams & Ulmer, said record showing the appraisement by the appraisers, the date of the assignment being in May, 1898, it appearing in evidence that the representations of solvency upon which the sale was based, which was here sought to be rescinded, was made January 27, 1898.] [1]

Defendant submitted, among others, the following point:

[6. Inasmuch as the goods purchased from the plaintiff by Williams & Ulmer were paid for, in part at least, with notes, the plaintiff cannot in any event rescind the contract as to such

goods and recover them without tendering back the unpaid notes, or at least filing them in open court. As there is no evidence that the unpaid notes have been tendered back, and they have not been filed in court, the verdict must be for the defendant.  *Answer:* Refused.] [13]

The court charged the jury in part as follows :

[I want to say that I consider this contract as being bound by the New York law on the subject, and I have already said to you that there must be insolvency, the knowledge of it, and the intention not to pay ; but in the last expression, at different parts of my charge, I may have used the language in a different way, and I will quote what I mean from a decision of one of our courts on that subject, and whatever I may have said heretofore, this is what the law is, as announced by the higher court upon that subject, in relation to the insolvency, knowledge and intention to pay : " If at that time they knew they were insolvent, and received the property with the intention to not pay for it, they were guilty of fraud in law, under the New York authorities, which control in this case."] [7]

[The court entered judgment in favor of plaintiff and against defendant.] [15]  Defendant appealed.

*Errors assigned* among others were (1) to ruling on evidence, reciting same.  (7) To a portion of the judge's charge, reciting same.  (13) Refusal of defendant's sixth point, reciting same. (15) Entry of judgment in favor of plaintiff.

*Hazard Dickson,* for appellant.—The record of the assigned estate of Williams & Ulmer, Limited, was inadmissible in evidence: Cooperage Co. v. Gaul, 170 Pa. 545; Crawford v. Shriver, 139 Pa. 239.

The plaintiff was bound to return such notes as it had received for its goods, or at least file them in court: Sloane v. Shiffer, 156 Pa. 59; Sloane v. Shiffer, 156 Pa. 65.

The law of Pennsylvania and not that of New York should have been applied by the court: Perlman & Co. v. Sartorius & Co., 162 Pa. 320.

The plaintiff was not entitled by the law of Pennsylvania to rescind the sales : Schwartz v. McCloskey, 156 Pa. 258.

*J. Siegmund Levin*, with him *Samuel B. Huey*, for appellee.—
The appellant's next contention is that the claimants were
bound to return such notes as they had received for the goods,
or, at least, file them in court.

We fully agree with this general statement of law and with
the reasons stated by the appellant in support thereof; but we
submit that the proposition has no application to this case.    In
order to make it incumbent upon the claimants to return such
notes as they might have taken in payment for goods, the sale
of which they have rescinded, it becomes necessary in the first
instance to show that the claimants had taken such notes.
There is no evidence in the case to that effect.    When asked
whether the claimant held any notes in payment for the goods,
the treasurer of the claimant company answered, " I don't know
that they do."    The inference from these words is not as argued
by the appellant, obvious that notes had been taken, but exactly
the converse, and thus the burden was placed upon the appel-
lant to show, if it can, that notes had been accepted by the
claimants.

Even under the laws of Pennsylvania, the claimant could
under the circumstances of this case have rescinded the sale.

In Rodman v. Thalheimer, 75 Pa. 232, it was said that "in-
solvency and a knowledge of it at the time of the sale are evi-
dence to go to the jury with other facts to show the intended
fraud: " Harding v. Lloyd, 3 Pa. Superior Ct. 293; Cooperage
Co. v. Gaul, 170 Pa. 545.

Under the law of New York, the claimant could without doubt
have rescinded the sale.

If under the law of Pennsylvania the claimant was entitled
to rescind the sale, it follows of necessity that such rescission
is upheld by the less stringent requirements of the laws of
New York.

OPINION BY BEAVER, J., December 10, 1900:

The issue tried in the court below was framed under the
sheriff's interpleader act, the plaintiff claiming to rescind a
sale of certain goods made to Williams & Ulmer whose per-
sonal property was levied upon by virtue of an execution issued
upon a judgment entered by the defendant, the goods in con-
troversy being included in the levy.

The appellant discusses the assignments of error, fifteen in number, under five distinct propositions:

" 1. The record of the assigned estate of Williams & Ulmer, Ltd., was inadmissible in evidence." The main issue was as to the insolvency of and the knowledge thereof by Williams & Ulmer at the time the purchase from the plaintiffs was made. The representations of solvency upon which the sale was based were made January 27, 1898. An assignment was made late in May of the same year. The record of the appraisement showed the condition of the estate at the time of the assignment and was some evidence of their financial condition at the time the representations were made; not conclusive, of course, but to some extent persuasive. In Com. v. Hazlett, 14 Pa. Superior Ct. 352, we held that the commonwealth could introduce the appraisement made by the appraisers appointed at the instance of the assignees at a period not greatly remote from the receipt of a deposit by a banker, in a criminal prosecution against an insolvent banker for receiving a deposit, knowing himself to be insolvent, " as an aid to the jury in determining the issue as to the insolvency of the defendant at the date of deposit." See also Com. v. Smith, 4 Pa. Superior Ct. 1, and Cooperage Co. v. Gaul, 170 Pa. 545. It is true that in both of these cases less time elapsed between the receipt of the deposits and the assignment than in this case between the representations and the assignment, but the principle is the same and the appraisement was not too remote to prevent its having some bearing upon the question of insolvency and the knowledge thereof by the assignors at the time the representations, upon which the purchase from the plaintiffs is based, were made.

" 2. The plaintiff was bound to return such notes as it had received for its goods or at least file them in court." There would be more force in this contention, if the issue were one between the vendor and vendee. The defendant has certainly no right to the notes, if any were in existence, but it is not shown that notes were given or that the plaintiff had ever received any in payment of the goods sold. The plaintiff's witness, who was asked as to notes, said he had no knowledge of the existence of any and did not know that the plaintiffs held any. If this had been disputed, the defendant could easily have shown that notes were given. A mere inference as to the

existence of notes imposed no obligation upon the plaintiff, much less the necessity of restoring a status which may never have had an existence in order to enable it to rescind.

"3. The law of Pennsylvania and not that of New York should have been applied by the court." The facts, as brought out in the testimony, clearly established a New York contract, and the court properly so held. The order was accepted in New York and the goods delivered there to the purchasers. There can be no question that, under all our authorities, this constituted a New York contract. It is not necessary to consider, therefore, the next proposition, which is

"4. The plaintiff was not entitled by the law of Pennsylvania to rescind the sales." If it was not a Pennsylvania contract, the law of Pennsylvania does not apply.

"5. Under the law of New York, if a vendor would rescind a sale, he must show the purchaser of the goods one knowingly insolvent and having a present intention not to pay for them." This may be a correct statement of the law of New York, but it is objected by the appellant that there was no proof of it, and herein is the only error into which the court below inadvertently fell. It is true that the case of Lowrey v. Ulmer, 1 Pa. Superior Ct. 425, was brought to the attention of the court, in which this court said: "The receiving of the goods at a time when the vendee knew he was insolvent and other facts showing his insolvency at the time of the purchase are evidence, however, of fraudulent intent at the time of the purchase, even if there were no representations at the time of the purchase as to insolvency, yet if the suppression of the insolvency is under such circumstances as point to a fraudulent concealment coupled with an intent not to pay for the goods, the vendor can rescind the sale for such fraud and retake the goods." But in that case there was a specific agreement of counsel "that it is the law of the state of New York that an insolvent vendee, knowing himself to be insolvent, who conceals from the vendor or fails to disclose to the vendor the facts of such insolvency, acquires no title to the goods sold and delivered by the vendor to such vendee in ignorance of the vendee's insolvency." It was unnecessary, therefore, to prove the law of the state of New York. In this case, however, there was neither agreement as to what the law was nor was

there any proof thereof.  It is true, as held in Bock v. Lauman, 24 Pa. 435, " that the law of a sister state is a matter of fact but not necessarily to be found by the jury, but will be considered by the court in a case depending on it, though not so found ; " but, in order to enable the court to consider it, it must be proved as other facts.  In Bollinger v. Gallagher, 170 Pa. 84, it was held that " the law of another state upon a subject coming under notice in the trial of a cause will be presumed to be the same as the law of this state upon the same subject.  It is incumbent upon him who alleges that it is different to show just what it is to the court who will judge of the sufficiency of the evidence, and its effect, and instruct the jury thereon." " A statute admits of exact proof by a copy and for this reason it cannot be shown by parol.  The expositions of that statute by the courts are not necessarily evidenced by any sort of documentary matter and for this reason may be proved by one who is familiar with them."   The court below had no such evidence before it as to what the law of New York was at the time of the trial.   It is undoubtedly true that the law of New York, as read from the case of Lowrey v. Ulmer, supra, was the law of that case for it had been specifically agreed by counsel that it should be so.   That decision, therefore, went no further than its own facts and there was nothing to show that the law of New York had not been changed in the mean time.   The seventh specification of error must, therefore, be sustained.

Judgment reversed and a new venire awarded.